# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE JULY TERM, A. D. 1854.

JOHNSON & GRIMES VS. McDANIEL.

An action on the case for deceit in falsely warranting a chattel to be sound, is maintainable, though assumpsit or covenant on the express contract of warranty would, at this day, be the more appropriate remedy.

When the declaration in case sets out a contract of warranty, though alleged to have been falsely and deceitfully made, the issue is upon the breach of the special contract, as it would be in assumpsit or covenant: the *scienter* of the defendant need not be proved, nor is it necessary that the plaintiff should have returned the chattel, or offered to do so, and rescind the contract.

In either form of action, the rules governing and the results to be obtained, are substantially similar; so that, in the action on the case, it is necessary, in setting out the contract, to describe it correctly, and prove it is alleged.

*Appeal from  Crawford Circuit  Court.*

Hon. A. B. GREENWOOD, Circuit Judge.

WALKER & GREEN, for the appellants.  We maintain, *first*,
That to support an  action  on  the  case for deceit  in  the sale of
personal property, it is essentially necessary to prove the *scienter*.
*Chandelor vs. Lopus, Smith's Leading Cases, Am. Ed.*, notes
and authorities  collected; *Ormond vs. Huth et al.*, 14 *Mees. &
Wels.* 651.

*Secondly*, That  the  principal  is not  liable  for the  acts of a
*special* agent, where he  transcends  the  limits of his authority.
*Stainer vs. Tysen*, 3 *Hill's Rep.* 279; *North River Bank vs.
Aymar, Ib.* 262; *Bank of the  U. S. vs. Davis*, 2 *Ib.* 451; 2 *Stark.
Ev.*, 1240; 3 *T. R.* 760; 1 *Esp.* 112.

*Thirdly*, That there is a  material  and fatal  variance between
the allegation and proof  respecting  the price paid for the slave—the
allegation being that $600 was the consideration, and  the  proof
being that $1200 were paid for this slave  and others.   *Penn vs.
Stewart*, 6 *Eng.* 41; *Buckman vs. Haney, Ib.*; 1 *Ch. Pl.* 299, 384;
1 *Selw. N. P.* 104; 5 *T. R.* 496; *Bristow vs.  Wright*, 1 *Smith's
Lead. Cas.* 547, *and cases cited.*

*Fourthly*, That, even admitting the plaintiff's right to recover,
under the state of facts, he was entitled only to  nominal dama-
ges—it does not appear what was the price paid, nor  what was
the value of the slave, nor that he has  been returned, nor  what
disposition has been  made  of him — as to the rule and  measure
of damages upon a breach of warranty.   1 *Taunt.* 566; 2 *Camp.*
82; *Cary vs. Gruman*, 4 *Hill* 625; *Voorhees vs. Earl*, 2 *Ib.* 288;
*Cothers vs. Keever*, 4  *Barr's Rep.* 168; *Willis vs. Dudley*, 10
*Ala. Rep.* 933; *Millin vs. Rowland*, 11 *Ib.* 732.

S. H. HEMPSTEAD, for appellee.   The action was in proper form,
( 2 *Ch. Pl.* 680, 681,) and the proof fully  established  the falsity

of the warranty. Both counts are according to the form laid down in Chitty, at page 680 of 7 Amer. Edition. 2 *Chitty's Precedents*, 528; 6 *J. R.* 142; 1 *Com. Dig.*, action on the case for deceit, (*A.* 11.)

In an action for deceit upon an express warranty, the *scienter* need not be alleged, nor if stated, need it be proved. 2 *East* 446; 2 *Chitty* 680, note d.; 2 *Ch. Prec.* 528, note q.; 4 *Bingham* 66, 73; 1 *Ch. Pl.* 157; 1 *J. J. Marsh.* 440.

If an express warranty turns out untrue, it is immaterial whether the party making it knew it to be false or not. 1 *Story's Eq.* 193; *Hardin* 50; 1 *Bibb.* 244; *Cooke* 266; 3 *Cranch* 270.

In the case of the breach of an express warranty, the party may sue upon it for damages, without returning the goods, or offering to return them. 2 *Kent* 480; *Sedgwick on Damages*, 296; *Campbell vs. Fleming*, 1 *Ad. & El.* 40; *Voorhees vs. Earl*, 2 *Hill* 288; *Borrskins vs. Bevan*, 3 *Rawle* 23; 3 *Stew. & Porter* 322; *Story on Con.*, 551.

A plaintiff may recover for breach of warranty, in the sale of personal property, in an action on the case for damages, without returning or offering to return the property sold. *Boorman vs. Jenkins*, 12 *Wend.* 566; 1 *Term Rep.* 136; *Curtis vs. Hannay*, 3 *Esp.* 82; *Long on Sales*, 126; 1 *J. J. Marsh.* 437

As to the rule of damages, *Sedg. on Dam.* 290, 295, 401, 402, 564, *and cases cited;* 5 *Mason* 1; 2 *Hill* 288; 4 *Ib.* 626; 8 *Porter* 429; 8 *Johns.* 446; 7 *Wend.* 354.

Mr. Chief Justice WATKINS delivered the opinion of the Court

This was an action on the case, brought by McDaniel against the appellants, for deceit in falsely and fraudulently warranting a slave, whom they had sold to the plaintiff, to be sound. The declaration contained two counts. The first alleged, that, whereas on, &c., at, &c., the plaintiff, at their special instance and request, bargained with the defendants to buy of them a certain negro boy, slave, named *Elijah*, aged about twenty-two years, for a certain price, to wit: the sum of six hundred dollars,

and they, by then and there falsely and fraudently warranting said slave Elijah to be sound in body and mind, then and there sold said slave to the plaintiff, for the said sum of six hundred dollars, which was then and there paid by the plaintiff to the defendants, all of which fully appears, by a certain instrument of writing, commonly called a bill of sale, then and there executed by the defendants to the plaintiff, and which he showed to the court, in the words and figures following, to wit: "Know all men by these presents that we, Charles B. Johnson and Marshall Grimes, of Fort Smith, county of Crawford, State of Arkansas, for and in consideration of the sum of twelve hundred dollars, to me in hand paid, the receipt whereof is hereby acknowledged, do, by these presents, bargain, sell, and dispose of, unto James McDaniel, one negro boy, Elijah, aged twenty-two, one negro girl, named Betsey, and child, aged, the first, twenty, and the child ten months, all slaves for life, whom we warrant to be sound in body and mind; and furthermore do warrant the title to said slaves unto James McDaniel, his heirs and executors, against all claims of whatsoever kind. In witness whereof, we have hereunto subscribed our names, by our legal attorney, this 5th day of April, 1849.

[Signed.]            CHARLES B. JOHNSON,
                     MARSHALL GRIMES,
                     By E. B. BRIGHT, *Attorney.*

[Witnessed.]     J. M. SMITH,
              WM. B. CRABTREE."

The declaration then proceeds to aver that in fact said slave Elijah, at the time of such said sale and warranty, was unsound in body and mind, and thenceforward continued to be unsound, and that the defendants by means of the premises, on, &c., at, &c., falsely and fraudulently deceived the plaintiff in the sale of said slave, whereby such slave afterwards, to wit, &c., not only became of no use or value to the plaintiff, but he was also put to great expense, amounting to a large sum, to wit : three hundred

dollars, for boarding, clothing, taking care of the slave, for medical attention bestowed upon him, &c.

The second count contains no allusion to the bill of sale, but sets out a parol contract of warranty, in all other respects similar to the first, with general conclusion to the plaintiff's damage, &c.

The issue upon the plea of not guilty, was submitted to the Court, sitting as a jury, for trial. The Court found for the plaintiff, assessing his damages to $703 50. The defendant moved for a new trial, because the verdict of the Court was contrary to the evidence, and not warranted by the law or facts of the case; and to the overruling of this motion, he excepted, setting out a mass of testimony adduced on the trial, all of which, including the bill of sale, set out in the first count of the declaration, was admitted without objection, and no question of law was raised during the progress of the trial. As usual in cases of this description, there was much conflicting testimony, as to the fact of the unsoundness of the slave, and the nature of his disease, but there is ample testimony to uphold the verdict, upon what we might suppose to be the substantial merits of the case. The evidence conduced to prove that the defendants below sent a number of negroes to the south in charge of Bright, as their agent, for sale. On the way, he exchanged some of the negroes for *Elijah* and the woman Betsey and child, and not long afterwards he sold them to the plaintiff below for $1200, and executed the bill of sale with warranty of soundness, as set out in the first count of the declaration. That the negro *Elijah* was unsound, and radically diseased, at the time of the sale to the plaintiff, and continued to be so, and proved to be of no value to him, and that a negro of his age, &c., would have been worth, at the time of the sale, from five to seven hundred dollars. That, though the agent of defendants had no authority to exchange, but only to sell, the negroes sent by him for sale; yet that, on his return to Fort Smith, he reported to his principals how he had disposed of the negroes, and accounted to them for the proceeds, including what he had received of the plaintiff for Elijah, and Betsey and child, which

15ʙʙ

the defendants received, and did not disapprove of what their agent had done.

Upon such testimony, a jury, or the Court in their stead, might well have found that the defendants were liable for the acts of Bright, as their agent, upon the principle that a subsequent ratification is equivalent to a prior authority. Nor would there be any cause to complain of the verdict for excess of damages, if we look only to the evidence as to the value of the slave, or of one answering his description..

The plaintiff had his election to sue in assumpsit, for a breach of the contract of warranty, or by action on the case, for a false warranty. It is true that the action of assumpsit is the more appropriate remedy where there is an express warranty, which may be said to negative the idea of fraud or deceit, upon which the ancient form of the remedy by action on the case was founded. The written contract of warranty merges any contemporaneous verbal representation, by which the plaintiff may have been induced to accept it, and it is, at the same time, a substantial pledge, on the part of the defendant, of his sincerity and his belief in the truth of the representation embodied in the warranty. And so, in this case, there is no evidence, tending to show actual fraud or unfair concealment, either on the part of the defendants, or the agent, who acted for them, even supposing they could be responsible, in any form of action, for a false and deceitful representation of their agent, not shewn to have been made by their direction or within the scope of his authority. But notwithstanding the marked distinctions, at this day, between case and assumpsit, there may yet be substantial reasons for admitting the authority of established precedents allowing the form of action in case for a false warranty; as if it be doubtful whether the representation to be proved will amount to a warranty in the particular case, and where none is implied by law; so that a count may be joined for the deceit, without warranty, and though there be an express warranty, a case may be supposed where the vendee would prefer to repudiate the contract altogether and sue for the fraud, or

would have to resort to the action on the case for deceit, in consequence of a representation concerning a patent defect, to which it may not extend.

But the leading case of *Williamson vs. Allison*, 2 *East* 446, also establishes that in the action on the case in tort for a breach of warranty in the sale of chattels, the deceit consists, or rather is implied, in the falsehood of the warranty, which being established, the defendant's knowledge of it is immaterial, and though averred, need not be proven. Whether we regard the warranty as a contract, or as the means of practising a deceit, whereby, if false, the purchaser may be induced to buy without due examination, it is the breach of it which is the gist of the action, and it may now be considered as well settled that the action on the case for a breach of warranty is governed by like rules, and is the same in its results as assumpsit upon the contract, or covenant, where it is under seal. Where there is an express warranty of soundness of a chattel, the measure of damages for a breach of it, in either form of action, is the difference between the value of the chattel, supposing it to be sound, and its actual value, according as it is proved to have been unsound, with interest on the amount so ascertained, and in the absence of any proof to the contrary, the price paid for a chattel, warranted to be sound, is the best evidence of its value as fixed by the parties to the contract : and in either form, the action, proceeding upon the contract, is an affirmance of it. When there is deceit without warranty, or a warranty accompanied by fraud, the vendee may disapprove the sale, and return the chattel or offer to do so, and recover such direct consequential damages, for the injury, as he may have sustained, in an action strictly on the case, the gravamen of which is not merely the falsity of the representation, but that it was false within the knowledge of the party making it. We apprehend that whenever the declaration, conceding that it may be framed in case, sets out a contract of warranty, though alleged to have been falsely and deceitfully made, the issue is upon the breach of the special contract, as it would be in assumpsit. If treated

as an action on the case for deceit, or breach of the general duty of fairness required of men in their dealings, which would avoid the contract, it is obvious that the plaintiff here must have failed for want of proof of the *scienter* in the defendants, or of any effort on his part to return the slave. The contract not being mere inducement to the fraud, but the foundation of the action, the plaintiff, in setting it out in his declaration, was bound to describe it correctly, and prove it as laid. If indeed the repugnancy does not appear on the face of the declaration, there can be no doubt (*Penn vs. Stewart*, 6 *Eng.* 41; *Turner vs. Huggins*, *Ib.* 337; *Buckman vs. Haney*, *Ib.* 340,) that there was a material variance between the allegations and proof respecting the contract, for which the bill of sale should have been excluded, if the objection had been made. The bill of sale being for three negroes for an entire consideration of twelve hundred dollars, it was incumbent on the plaintiff, suing for a partial breach of it in consequence of the unsoundness of one of the negroes, to describe the contract correctly, and then show by appropriate averments, the partial breach for which he claims to recover damages. If, after verdict, the term "price" may sometimes be considered as synonymous with value, or as meaning, in this instance, the parties at the time of agreeing upon the gross price to be paid for the three slaves, estimated Elijah being one of them, at six hundred dollars, still we do not find any evidence to that effect reported in the bill of exceptions. If the plaintiff in stating the breach, had thought proper to aver that the slave in question, supposing him to be sound as warranted, was of the value of six hundred dollars, whereas in his actual unsound condition he was of no value, the proof might have varied either way, the extent of the recovery depending upon the evidence; but according to the construction which seems unavoidable, the allegations of price, as made in the declaration, must be regarded as descriptive of the article, and therefore ought to have been proved.

A difficulty consists in determining the effect of the motion for new trial, with reference to the practice heretofore sanctioned by

this Court.  We have held the motion for new trial to be an application to the sound equitable discretion of the Court below, and a waiver of all previous exceptions for error in matters of law reserved during the progress of the trial, yet they may be reserved by incorporating them as part of the grounds assigned of the motion for new trial.  Here no such exceptions appear to have been taken or reserved, and the only ground of the motion for new trial was one addressed to the discretion of the Court below, and which elsewhere could not be reviewed on appeal or error.  But while a judgment will not be reversed upon a question as to the weight of evidence, according to the settled practice of this Court, a new trial may be awarded where there is a defect or failure of evidence as to any material fact necessary to uphold the verdict.  Even supposing the declaration here discloses a sufficient cause of action, upon which a valid judgment could be rendered, a good title defectively stated so as to be aided by the verdict, though the first count to which the evidence applies sets out two distinct and inconsistent contracts, the judgment would have to be reversed, because of the want of any evidence conducing to prove the allegation as to the price at which the plaintiff purchased the unsound slave.  Upon the remanding of the cause, the plaintiff will have leave to amend his declaration, adhering to the form of action adopted in case.