WILLIAM KUHLMAN, APPELLEE, v. EMMA SHAW ET AL.,
APPELLANTS.

FILED MAY 13, 1912.   No. 16,700.

1. Vendor and Purchaser: MISREPRESENTATIONS: MATERIALITY. Where the plaintiff brought suit against the defendants for damages alleged to have been sustained by him because of the misrepresentations of the defendants concerning the quantity of land contained in the "south half of the northeast quarter of section 3," and on the trial the evidence showed that the defendants represented that the northeast quarter of said section was a "long quarter," and that it was fractional and contained 172 or 173 acres, and further showed it was represented that if the plaintiff bought the south half of the northeast quarter he would get 86 or 87 acres, being 6 or 7 acres more than half a quarter section of land usually contains, and it further clearly appearing that the excess of the quarter above 160 acres was in the north half, which contained above 92 acres, and that no considerable part of the excess was in the south half, as it contained only 80.29 acres, held, that the misrepresentations made were material and proper to be considered by the jury in determining whether damages should be allowed, and in what amount.

2. ——: ——: RECOVERY OF DAMAGES.   Where it is shown that the representations were made as alleged in the petition, that they were untrue, in so far as they applied to the "south half of the northeast quarter," that they were believed by the plaintiff to be true, that the plaintiff relied upon them and was injured in consequence, receiving only a fraction above 80 acres, when he bargained for 86 or 87 acres, held, he may recover his actual

damages sustained because of the difference in value in the number of acres actually sold and conveyed as compared with the number of acres bargained to be sold and conveyed.

3. Trial: INSTRUCTIONS. The court instructed the jury as follows: "The court instructs you that, before the plaintiff can, in any event, recover a verdict against the defendants, he, the plaintiff, must prove by a preponderance of the evidence that the defendant Henry Shaw was the duly authorized agent of said Emma Shaw to make the sale of said premises to the plaintiff, and that said Henry Shaw did, in fact, make such sale as the agent of said Emma Shaw." *Held,* That the instruction given as above was favorable to the defendants, and, if erroneous, that it could not have been prejudicial to them.

4. ———: ———. Where the court refused to give to the jury, at the request of the defendants, an instruction as follows: "The jury are instructed that if before the plaintiff purchased the land in dispute he inquired as to how many acres were contained in the south half of the quarter section of land, and was informed by Bucholz that it contained 80 acres, or was informed when the conveyance was made in Whittaker's office that this governmental description of the land contained only 80 acres, then, in either case, the plaintiff cannot recover"—but did give of its own motion the following instruction: "No. 6. The court instructs you that if you find from the evidence that the plaintiff at the time he purchased said land knew that the whole quarter section contained about 173 acres, and that about 93 acres thereof were in the north half of said quarter section according to government survey, and only about 80 acres of it were in the south half of said quarter section according to government survey, then your verdict should be for defendants"—*held,* that the jury were properly instructed touching this question, and that it was not prejudicial error, under the evidence, to refuse the instruction requested.

APPEAL from the district court for Richardson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*C. Gillespie* and *Edwin Falloon,* for appellants.

*Reavis & Reavis, contra.*

HAMER, J.

The action in this case was brought in the district court

for Richardson county by the plaintiff, appellee in this court, William Kuhlman, to recover $664 damages from the defendants, appellants in this court, Emma Shaw and Henry Shaw, alleged to have been sustained by the plaintiff because of the purchase by him from the said defendants of a certain tract of land alleged by said defendants (as it is claimed by the plaintiff) to contain between 86 and 87 acres, and described in the warranty deed given by the said Emma Shaw and her husband conveying said land to said plaintiff as "all of the south half of the northeast quarter of section 3, township 2, range 16 east of the 6th P. M." It is alleged in the petition that the plaintiff relied upon the representations and assurances of the defendant Henry Shaw, made to the said plaintiff as the agent of his wife, Emma Shaw, to the effect that the said northeast quarter of section 3 was a "long quarter," containing more than 160 acres, and that the south half of the said northeast quarter contained more than 80 acres; that said northeast quarter contained 172.73 acres, and that said warranty deed for the south half of said quarter should have contained and conveyed 86.37 acres, but only did contain and convey 79.73 acres; that the said northeast quarter contains 172.73 acres, but that said defendants had on February 12, 1907, sold and conveyed to one August Bucholz the north half of the northeast quarter of said section 3, township 2 north, of range 16 east of the 6th P. M., which "said deed, among other things, contained the following warranty: 'Said described land contains 93 acres, and if, upon a survey of the same, it does not contain 93 acres the said Shaw agrees to deed to the said Bucholz enough land adjoining this on the south to make 93 acres; that said deed was delivered on the date above mentioned, and is recorded in deed book No. — at page — of the deed records of Richardson county.' " "That by reason of the deed last above mentioned the said defendants did convey to him the south half of the northeast quarter of said section, which should contain 86.37 acres, but in fact said defendants owned only 79.73 in said

quarter, which is less than the land described in said deed, and less than the lands agreed to be conveyed in their said contract; that plaintiff is entitled to 6.64 acres more under said deed and contract than he now has. Plaintiff avers that the land so conveyed by said contract and in said warranty deed of conveyance is worth at this time $100 an acre; and that by reason of being deprived of the land so purchased by him under said contract in said warranty deed he has been damaged in the sum of $664." There was a prayer for judgment.

The defendants answered denying each and every allegation contained in the petition "except what may be hereinafter specifically admitted." They further allege that prior to August 6, 1907, they entered into a contract to sell to the plaintiff the south 80 acres of the northeast quarter of section 3, township 2, range 16, in Richardson county at the agreed price of $90 an acre, the "entire consideration being $7,200;" that the intention was only to convey the said 80 acres "at the agreed price of $7,200, which has been fully paid;" that the intention was not to convey to the plaintiff the south half of said quarter section, but "80 acres of land;" that said northeast quarter consists of lot 3 containing 46.67 acres, lot 4 containing 46.04 acres, and that the south part of the northeast quarter contains a slight fraction more than 80 acres; that said two lots 3 and 4, being the north forties of said northeast quarter, had previously been conveyed, as the plaintiff well knew, to August Bucholz (the deed to Bucholz describes them as lots 1 and 2); that the plaintiff well knew that he was only buying the remainder of the quarter which had not already been conveyed to Bucholz; that the line dividing the land conveyed to Bucholz from the land conveyed by the defendants to the plaintiff had been established according to the government survey, the north half containing over 92 acres and the south half containing a little over 80 acres. There was no reply.

A trial was had upon the issues joined before Judge Pemberton and a jury. A verdict was found for the plain-

tiff for $559.  A motion for a new trial was filed by the
defendants, and overruled, and thereupon the plaintiff
had judgment for the full amount of the verdict and the
costs.

It is stipulated that the south part of the quarter con-
tains 80.29 acres.  The evidence shows that the north
forties, lots 3 and 4 (or 1 and 2 as the case may be),
contain, respectively, 46.67 and 46.04 acres.  It appears,
therefore, that the alleged statement of the defendant
Henry Shaw to the purchaser Kuhlman that the quarter
was a "long quarter" was correct; but whether he informed
the plaintiff of all that he knew concerning the amount of
land contained in the south part of the quarter is some-
thing which invites further discussion later in the case.

It is contended by the appellants that the court erred
in giving the third instruction upon its own motion as
follows:  "The court instructs you that, before the plain-
tiff can in any event recover a verdict against the defend-
ants, he, the plaintiff, must prove by a preponderance of
the evidence that the defendant Henry Shaw was the duly
authorized agent of said Emma Shaw to make the sale of
said premises to the plaintiff; and that said Henry Shaw
did in fact make such sale as the agent of the said Emma
Shaw."  It is claimed by the defendants' counsel in their
brief that Mrs. Shaw swears positively that Henry Shaw
was not her agent to make the sale of this land, and that
when Kuhlman was at her house she asked $90 an acre
for the land.  It is claimed that the husband must have
been authorized by her in writing.  The instruction in
question seems quite favorable to Mrs. Shaw.  It clearly
puts the burden upon the plaintiff, and seems under the
evidence to be wholly without prejudicial error to the
defendants' case.  Mrs. Shaw cannot claim and receive
the benefit of her husband's persuasive and effective con-
versation without being liable for it.  If the testimony of
the witnesses for the plaintiff is true, Mrs. Shaw received,
and is yet holding, the fruits of her husband's skilled
tongue.  The claim of counsel for the defendants assumes

the testimony of Shaw and his wife to be conclusive con-
cerning the alleged fact that the husband was not his
wife's agent in bringing about the sale, but this ignores
the testimony of Kuhlman, Woodring, and Wamsler, and
is seemingly an unwarranted assumption that there was
nothing relating to this part of the case to submit to the
jury.   In this case the agency was attempted by the de-
fendants to be made a question of fact, the determination
of which rested upon conflicting testimony, and it would
seem therefore to be proper that this issue should be given
to the jury; but, if not, then the defendants could not
have been prejudiced by it, as submitting the question to
the jury gave the defendants a chance to win, which they
could not otherwise have had.

The defendants claim that the court erred in refusing
to give to the jury at their request instruction No. 4, as
follows: "The jury are instructed that if before the plain-
tiff purchased the land in dispute he inquired as to how
many acres were contained in the south half of the quarter
section of land, and was informed by Bucholz that it con-
tained 80 acres, or was informed when the conveyance
was made in Whittaker's office that this governmental
description of the land contained only 80 acres, then, in
either case, the plaintiff cannot recover." It is contended
by the defendants concerning this instruction that, at the
time the deed was drawn in Whittaker's office, it was there
stated in the presence of Kuhlman that he was buying 80
acres at $90 an acre; also, that Mrs. Shaw was there
present, and, if Kuhlman had bought 86 or 87 acres for
$7,200, it was then incumbent upon Kuhlman to inform
Mrs. Shaw of this fact, and not to keep quiet and by his
silence perpetrate a fraud upon her.  As to what was said
in Whittaker's office there is a dispute and the witnesses
do not agree, and this question was submitted to the jury
along with the other issues in the case, and they found
against the defendants.  The sixth instruction given by
the court upon its own motion seems to cover the exact
question contained in the request of the defendants.  By

the sixth instruction the jury were told that if the plaintiff knew "that the whole quarter section contained about 173 acres, and that about 93 acres thereof were in the north half of said quarter section according to government survey, and only about 80 acres of it were in the south half of said quarter section according to government survey," then the verdict should be for the defendants. It would seem that this instruction fairly presented to the jury the question of what the plaintiff knew about the amount of land included under the description. There seems to be no legitimate cause of complaint because of the failure of the court to give the instruction requested.

The petition charges that the plaintiff suffered damages because of the false representations of the defendants. The evidence shows that Kuhlman went to Shaw's house, and that Shaw and Kuhlman talked together about the purchase of the premises in the presence of Shaw's wife. The wife, who is one of the defendants, therefore knew that her husband was negotiating for the sale of the premises. When Kuhlman, the purchaser, and Shaw met down town after dinner and Shaw continued the negotiations, it is claimed that he then told Kuhlman that if he bought the land he (Kuhlman) would not be paying $90 an acre for it because the northeast quarter was a long quarter, and that if he (Kuhlman) bought the south half he would get 86 or 87 acres. It is perhaps immaterial whether Shaw personally knew that his representations were untrue. *Foley v. Holtry*, 43 Neb. 133; *Carter v. Glass*, 44 Mich. 154; *Shippen v. Bowen*, 122 U. S. 575; *Johnson v. Gulick*, 46 Neb. 817. In *Phillips v. Jones*, 12 Neb. 213, it is said: "And if a party, without knowing whether his statements are true or not, makes an assertion as to any particular matter upon which the other party has relied, the party defrauded, in a proper case, will be entitled to relief"— citing *Smith v. Richards*, 13 Pet. (U. S.) *26, *38; *Turnbull v. Gadsden*, 2 Strob. Eq. (S. Car.) 14; *McFerran v. Taylor*, 3 Cranch (U. S.) 281. This court quotes with approval from the last-named case that "he who sells

property on a description given by himself is bound in equity to make that description good, and if it be untrue in a material point, although the variance be occasioned by mistake, he must remain liable for that variance." *Phillips v. Jones, supra.*

Shaw, the husband, had no business to make the representations unless he knew them to be true, and if he did make them without knowledge upon the subject, and his wife received the benefit of these representations, then she ought to give up the benefit received. In *Williamson v. Allison,* 2 East (Eng.) 446, it was held not necessary either to aver or prove the scienter. Lord Ellenborough, C. J., said: "But, here, if the whole averment respecting the defendant's knowledge of the unfitness of the wine for exportation were struck out, the declaration would still be sufficient to entitle the plaintiff to recover upon the breach of the warranty proved. For if one man lull another into security as to the goodness of a commodity, by giving him a warranty of it, it is the same thing whether or not the seller knew it at the time to be unfit for sale." And Le Blanc, J., said: "The insertion or omission of the fact of the defendant's knowledge at the time, that the wine was unfit for sale, according to the warranty, makes no difference in the cause of action declared on, and therefore it may be struck out altogether." The same rule as to averment and proof of scienter is laid down in the following cases: *Beeman v. Buck,* 3 Vt. 53; *West v. Emery,* 17 Vt. 583; *Johnson & Grimes v. McDaniel,* 15 Ark. 109; *Hillman v. Wilcox,* 30 Me. 170; *Newell v. Horn,* 45 N. H. 421; *Ives v. Carter,* 24 Conn. *392. The case of *Ives v. Carter* is instructive, while that of *Newell v. Horn* closely resembles the instant case.

It is claimed by counsel for the defendants that the wife sold the land herself, and she attempts to testify to that fact, but the evidence clearly shows that she knew that her husband was active in making the sale and that he was negotiating with Kuhlman. The husband seems to have done a large share of the talking at the residence.

The evidence shows a condition of things by which the jury were justified in believing that the representations were made and that they were untrue, and that the plaintiff believed them to be true, and that he bought the land because he relied upon the truth of the representations as made, and that he was injured because of the fact that he did not get 86 or 87 acres of land, which he understood that he was purchasing. He only got a fraction more than 80 acres. It is in testimony that the representations were made as alleged, that such representations were not true, that they were believed to be true, that the plaintiff relied upon them, and that he was injured. *Johnson v. Gulick,* 46 Neb. 817; *Stetson v. Riggs,* 37 Neb. 797; *Upton v. Levy,* 39 Neb. 331.

Quarter sections adjoining the north and west boundaries of townships may be fractional, and therefore may contain more or less land than is given to other quarter sections within the township, and are sold as surveyed according to their plats in the land offices. The northeast quarter of section 3 was such a quarter section, and the north half of it had been divided into lots, 46.04 acres in one and 46.67 acres in the other, making the north half of the northeast quarter contain 92.71 acres, according to the copy of the plat (defendants' exhibit 1), and the south half containing, according to the same copy, 79.58 acres, although the parties stipulated that the south part of the quarter contains 80.29 acres.

It may be argued with force that "the south half of the northeast quarter" is equivalent to "all of the south half of the northeast quarter," and that one set of words conveys all the land that might be conveyed by the other. The latter phraseology is the language used in the deed. We think that "the south half of the northeast quarter of section 3" means all the south half of the quarter, and that the use of the additional words "all of" before "the south half of the northeast quarter of section 3" added nothing to the meaning of the words used, but we can understand that these words may have been used to in-

duce the purchaser Kuhlman to believe that he was getting the full half of all the land included in the quarter section, instead of the smaller quantity of land properly designated by "the south half of the northeast quarter," and which words would not properly include part of the lots which together made the north half of the northeast quarter. The way of using this phraseology was one of the facts for the jury to consider in determining the good faith of the defendants. Kuhlman testified that he went to Shaw's house, and that Mrs. Shaw said her husband was asleep, and she went upstairs and got him, and that he came down and they talked about the sale of the land in her presence, and the price, and that he told them that $90 an acre was more than he was willing to give, as there were no improvements on the land, and that he stayed there until it was nearly noon, and that he was invited to dinner, but excused himself on the ground that he had other business to attend to, and that in the afternoon, about 3 o'clock, Shaw met him down town and said to him that he had better buy the land, that Shaw said, "Now, look here Kuhlman, that land won't cost you $90 an acre;" that Shaw then explained that it was a fractional piece and that he got half of the quarter, and thereupon that Kuhlman said, "If that is so, I will take it." "Well, he said that was a big quarter, and this half quarter would overrun 5 or 6 acres, he said." Then Kuhlman told him that he would take it. He also testified that, if Shaw had not said that it overran 5 or 6 acres, he would not have bought it. Kuhlman testified that Woodring and Dan Wamsler were present and heard the talk in the afternoon between Shaw and himself. They seem then to have gone to Whittaker's office to have the deed drawn, and Shaw said: "Now, I have got to phone for my wife to sign the deed." Woodring and Wamsler corroborated the evidence of Kuhlman. Mrs. Shaw, one of the defendants, corroborates the testimony of Kuhlman to the effect that her husband was out with Kuhlman, and that he made the arrangement for her to come up and make the deed. He

seems also to have been at the Shaw residence before and was trying to buy the land. Although Shaw testified to these things, she claimed that her husband was passing in and out of the house at the time the sale was made, and that she really made the sale herself. She says of her husband: "Yes, sir; he was in the house a short time, he was passing out, but when he came in we had the thing settled; he didn't have anything to say about the land, I always done my own business and sold my own land." It seems, according to her testimony, that Kuhlman came to the residence three times before the sale was finally completed. The testimony of the plaintiff and his witnesses is controverted in part, but it was for the jury to determine the facts, and they have done so. The court believes that the verdict is supported by evidence sufficient to sustain it.

We are unable to perceive any substantial error in the proceedings. The judgment of the district court is therefore

AFFIRMED.

LETTON, J., not sitting.

FAWCETT, ROSE, BARNES and SEDGWICK, JJ., concur in the conclusion.