STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V.
AMERICAN STATE BANK OF OMAHA:
K. C. KNUDSON, RECEIVER, APPELLEE: J. A. DOUGHERTY,
RECEIVER OF CARROLL TRUST & SAVINGS BANK,
APPELLANT.

FILED JUNE 25, 1926.   No. 24214.

1. **Compromise and Settlement.** Where an officer of a bank wrong-
fully places money of the bank to his credit and the bank, with
full knowledge of the fact, thereafter makes a settlement by
taking the secured obligations of the officer for the same, it
thereby ratifies the unauthorized appropriation and vests such
officer with the legal title to the funds appropriated by him.

2. **Banks and Banking: ACTS OF OFFICERS: RATIFICATION.** Where
an officer of a bank gives his individual note to another bank
and places the proceeds thereof to the credit of the bank of which
he is an officer, and which it accepts and uses, such bank may
not complain that such officer subsequently pays and discharges
his note out of the bank's funds. The transaction is equivalent
to the bank borrowing the money and subsequently paying its
own debts.

APPEAL from the district court for Douglas county:
JAMES M. FITZGERALD, JUDGE. *Affirmed.*

*Crofoot, Fraser, Connolly & Stryker* and *Salinger, Reyn-
olds, Meyers & Cooney,* for appellant.

*Jackson B. Chase, Brogan, Ellick & Raymond* and *C. M.
Skiles,* contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD,
THOMPSON and EBERLY, JJ., and REDICK, District Judge.

DAY, J.

On December 4, 1922, in a proper proceeding by the state,
a receiver was appointed to take charge and wind up the
affairs of the American State Bank of Omaha. For con-
venience, this bank will be referred to as the American
Bank. On April 26, 1919, J. A. Dougherty was appointed
receiver of the Carroll Trust & Savings Bank of Carroll,
Iowa, and directed to wind up its affairs.

Vol. 114]   JANUARY TERM, 1926.   723

State, ex rel. Davis, v. American State Bank.

In May, 1923, Dougherty, as receiver, filed a petition for the allowance of a claim for $25,083.35 against the American Bank, praying that it be allowed as a preferred claim and paid out of the guaranty fund. The trial court disallowed it, both as a preferred and a general claim, and dismissed the petition. From this judgment Dougherty has appealed.

Dougherty's claim is based on the theory that certain funds of the Carroll Bank were improperly used by one John Roelfsema, its president, to pay his individual obligation to the American Bank, which fact was known to the bank at that time; that the payment of the money under the circumstances constituted a deposit by the Carroll Bank for which the guaranty fund became liable. A determination of the question thus presented involves an examination of the transaction between the two banks.

It appears that for some time prior to February, 1918, the Peoples Trust & Savings Bank of Carroll, Iowa, had kept a credit balance with the American Bank, against which, in the course of business, it drew drafts. John Roelfsema was an officer of this bank. About this time a movement was inaugurated which resulted in the consolidation of the Peoples Trust & Savings Bank with the Carroll Trust & Savings Bank under the name of the latter bank and John Roelfsema was elected president. In carrying out this plan, on February 4, 1918, Roelfsema sent his note for $25,000, secured by collateral notes, to the American Bank and requested that the amount be credited to the Peoples Trust & Savings Bank. On the same date this was done and the Peoples Trust & Savings Bank so notified. On February 8, 1918, by the direction of the Peoples Trust & Savings Bank, $30,000 of its deposit in the American Bank was transferred to the credit of the Carroll Bank.

In the course of business between the Carroll Bank and the American Bank, the credit balance of the Carroll Bank, in August, 1918, became reduced to $1,383.59. At this time the Roelfsema note for $25,000 became due and, after some interchange of correspondence, the American Bank charged

724          NEBRASKA REPORTS.          [VOL. 114

State, ex rel. Davis, v. American State Bank.

$25,025, the amount then due upon the Roelfsema note, to the account of the Carroll Bank. The cashier of the Carroll Bank made some protest against the American Bank so charging the note and suggested that Roelfsema would arrange to take care of his note.

On August 24, 1918, Roelfsema sent two drafts, drawn by the Carroll Bank in favor of the American Bank and signed by him as president, to take up the notes. One of the drafts, for $20,000, was drawn on the Continental & Commercial National Bank of Chicago, and the other, for $5,083.35, on the Iowa National Bank of Des Moines. These drafts covered the amount due upon the Roelfsema note, on that date. Thereupon the Roelfsema note, together with the collaterals thereto, was returned to the Carroll Bank and the amount also credited to the overdraft of that bank.

The record shows that, in purchasing the two drafts sent to the American Bank, Roelfsema drew his check for the amount on the Carroll Bank against a deposit which he had therein. His deposit was charged with the amount of the two checks, leaving a balance to his credit of about $4,000. In this respect the books of the Carroll Bank show the transaction to be perfectly straight. The record also shows that, prior to the drawing of the two checks, Roelfsema's personal account in the Carroll Bank was credited with $24,651.25. This credit was obtained by Roelfsema executing a note of the Carroll Bank for $25,000, in favor of the Continental & Commercial Bank of Chicago, which the latter bank discounted and credited $24,651.25 to the Carroll Bank. This amount was credited on the books of the Carroll Bank to the personal account of Roelfsema. On April 23, 1919, just prior to the appointment of the receiver of the Carroll Bank, an examination of the bank's books disclosed that Roelfsema had wrongfully taken credit to his personal account the amount realized in discounting the note of the Carroll Bank with the Chicago Bank. On making this discovery, the Carroll Bank made demand upon Roelfsema that he give security for the appropriation of the assets which should have been credited to the Carroll Bank, and

thereupon he gave his note, secured by a mortgage on a farm, for $25,000, and a few days later executed a deed to the farm, in favor of the bank, in payment thereof. While the record is not entirely clear, we think it is fairly shown that the execution of the mortgage and deed was given and accepted in settlement of the indebtedness from Roelfsema to the Carroll Bank, created by this transaction, and had the legal effect of giving him the title to the money he had wrongfully placed to his credit.

While the whole transaction is somewhat involved and in some of its aspects not as clear as one might wish, still, we think, it is established that on February 4, 1918, the Peoples Trust & Savings Bank was, at the request of Roelfsema, given credit for $25,000, the amount of the note. So far as the record shows Roelfsema received no other consideration for his note. The effect of this transaction, so far, was to increase the credit balance of the Peoples Trust & Savings Bank in the American Bank $25,000. A few days later, at the direction of the Peoples Trust & Savings Bank and in furtherance of the scheme to consolidate the two banks under the name of the Carroll Trust & Savings Bank, $30,000, the credit balance of the Peoples Trust & Savings Bank in the American Bank, was transferred to the Carroll Bank. By this book transaction the Carroll Bank received the full credit for the Roelfsema note and used it in the course of business. If it should be conceded that Roelfsema used the Carroll Bank's funds to take up his note, it would seem that he was only reimbursing himself for the money that he theretofore placed at the bank's disposal and which it had accepted and used. Having received the benefit it would be a matter of simple justice that it should discharge the Roelfsema obligation.

Assuming that the evidence is sufficient to show that Roelfsema received an individual benefit from his $25,000 note to the American Bank, and that he paid it out of the funds of the Carroll Bank, still, under the record, we think that Dougherty is in no position to assert a claim, because the evidence shows that the bank, while a going concern,

made a full settlement with Roelfsema of his indebtedness and ratified his action in appropriating the proceeds of the Carroll Bank note, discounted by the Continental & Commercial National Bank. In either event, it would appear that Dougherty had no valid claim against the American Bank either general or preferred.

In addition to this, we think that the directors of the bank were fully cognizant of what Roelfsema was doing. The testimony is clear that one director, besides himself, knew of the transaction. Two other officers of the bank also knew it, but it is not fully disclosed whether they were directors. The testimony shows that the Carroll Bank was what is often referred to as "a one man bank." Roelfsema owned a majority of the stock, controlled the board of directors, and dominated the policy and business methods of the bank. No claim was ever made by the Carroll Bank that the transaction was a deposit. Statements showing the status of American Bank account with the Carroll Bank had repeatedly been made, and not until five years had elapsed and a receiver appointed was it ever claimed by any one that the Carroll Bank had money to its account in the American Bank.

Upon the consideration of the entire record, we are quite convinced that Dougherty, as receiver, has no claim against the American Bank either general or preferred. The judgment of the district court is

AFFIRMED.

Note—See Compromise and Settlement, 12 C. J. 342 n. 32, Banks and Banking, 7 C. J. 538 n. 18.