**CLARENCE G. BLISS, RECEIVER, APPELLANT, v. LIVE STOCK NATIONAL BANK OF OMAHA, APPELLEE.**

FILED MARCH 2, 1932. No. 28104.

*George I. Craven,* for appellant.

*W. C. Dorsey* and *Howard M. Baldrige, contra.*

Heard before ROSE, DEAN, GOOD and DAY, JJ., and THOMSEN, District Judge.

DAY, J.

This action was brought by the receiver of the First State Bank of Bethany against its president and vice-president and the Live Stock National Bank of Omaha, Nebraska, for the conversion of funds of the bank. The trial court entered judgment against the officers of the bank and in favor of the Live Stock National Bank against the receiver. The receiver appeals from the latter part of the judgment.

The transaction involved in this controversy had its inception in June, 1929, at which time the First State Bank of Bethany, on account of an apparent loss occasioned in part by their moving from the suburbs into the heart of the city, had an impairment of their capital amounting approximately to $4,000, which impairment of capital the banking department of the department of trade and commerce of Nebraska insisted should be replaced by the stockholders. To this end the vice-president of the bank

negotiated with the Live Stock National Bank of Omaha, Nebraska, for a loan of $4,000 on a note to be signed by one stockholder of the state bank and payment to be guaranteed by the other stockholders. This negotiation was carried on by correspondence, and the application of the vice-president to the Live Stock National Bank contains the following statement: "This is for the bank to cover deficit which was made when we started here and bought considerable supplies, but we are going good now and should soon be on a paying basis. We will also send in property statements. You will remember I told you about this when I was there, in your bank, and we do not want our public statement go out showing a deficit." This loan was finally made upon a note signed by the president and vice-president of the bank in their individual capacities and payment guaranteed by the other directors. The proceeds of the note were by the Live Stock National Bank placed on deposit to its credit in said First State Bank of Bethany. This amount was placed either in the undivided profits or surplus of the First State Bank. This replaced the impairment of the capital of the bank to the satisfaction of the state banking department, and accrued to the benefit of the stockholders of the bank and was for their benefit rather than for the benefit of the bank. This note was for 90 days and was dated June 26, 1929, and thereafter on September 27, 1929, the First State Bank sent to the Live Stock National Bank a draft for $500 as partial payment upon the note. This draft was not drawn upon the appellee but upon the Continental State Bank of Lincoln. The individuals liable on this note who were officers of the bank paid nothing to the bank for this draft. It was credited upon the note and renewal note and the balance of $3,500 due October 10 was accepted by the Live Stock National Bank. Subsequently, on October 17, 1929, this renewal note, at the direction of the vice-president of the First State Bank, who, in his individual capacity, had signed the note as maker, was charged to the account of the bank and thereupon the Live Stock

National Bank returned the note and the guaranty to the First State Bank.

The learned trial judge in the decision of this case relied upon the case of *State v. American State Bank,* 114 Neb. 722. In the syllabus in that case this court said: "Where an officer of a bank gives his individual note to another bank and places the proceeds to the credit of the bank of which he is an officer, and which it accepts and uses, such bank may not complain that such officer subsequently pays and discharges his note out of the bank funds. The transaction is equivalent to the bank borrowing the money and subsequently paying its own debts." The trial court was of the opinion that the above quoted law applied to the facts of this case. In the decree the trial court stated: "The argument that the impaired capital of the Lincoln bank cast a legal obligation on each stockholder is such an issue as to make the note in question in this case an individual obligation, while persuasive, does not appeal to this court as conclusive. All the stockholders or practically all of them authorized, if not directed, the Heiligers to negotiate this loan, and they all guaranteed its payment. All of which was done primarily for the use and benefit of the bank as such." While according the finding of the trial judge great respect and consideration, we are unable to reach the conclusion that the evidence in this case is sufficient to support such a finding. This loan was secured by the directors upon the individual note of two of the officers and guaranteed by others for the purpose of restoring an impairment to the capital stock. Such a loan was for the benefit of the stockholders and not for the benefit of the bank. The Live Stock National Bank, when they made this loan, made it, not as a loan to the bank, but upon the individual obligation of the stockholders. They were cognizant of its purpose, for in the very first letter, portions of which are heretofore quoted, they were told that it was for the express purpose of covering a deficit in the bank, and that they as stockholders were putting this

money in the bank in order that their public statement might not be issued showing a deficit. A perusal of the correspondence passing between the makers of the note and the bank is not capable of any construction except that such loan by the Live Stock National Bank was the individual and personal obligation of the stockholders of this bank. In passing, it is noted that a loan of this character to the bank was not of benefit to it. If the bank borrowed this money on its faith and credit, it was in no better shape after the loan than it was before. Regarded as a loan for the benefit of the bank, it merely enabled the bank to fool the department of trade and commerce by misrepresentation into permitting the bank to continue to accumulate and increase its losses so that at the time of closing it was in a worse condition than at the time of the loan. That a loan does not increase net worth is too simple to require demonstration.

The first payment upon the indebtedness evidenced by the original note of $500 was paid by a draft of the First State Bank for which the makers did not pay. There is no presumption that such a draft was paid for when issued and the burden is on the party claiming it was thus paid to prove it. *Mendel v. Boyd,* 71 Neb. 657. None of the directors or stockholders who had individually guaranteed this note knew at the time the bank closed that the note had been paid except the makers. Where the president and vice-president of a bank make an unauthorized payment of their individual debts out of funds of the bank, the bank may recover from the creditor who received the payment with knowledge that it was so paid. The fact that the president and vice-president are personally interested in a transaction is sufficient to put the creditor on inquiry as to their authority to pay their individual debts with funds of the bank. *State v. Thedford Bank,* 114 Neb. 534. Again, we stated this rule in *State v. Farmers State Bank,* 111 Neb. 585, as follows: "The cashier of a bank cannot legally pay his individual note with other notes belonging to the bank, and the payee in

such an individual note may be held liable for conversion if, with knowledge of the facts, he accepts payment in that manner."

The Live Stock National Bank, having received payment of the individual note of the president and vice-president of the First State Bank, unauthorized, from funds of the bank with knowledge, is liable for conversion of the amount so paid. The judgment of the district court is reversed and the cause is remanded for further proceedings in accord with this opinion.

REVERSED.