LIVE STOCK NATIONAL BANK OF SOUTH OMAHA, APPELLEE, V. FRANK J. MARSHALL ET AL., APPELLANTS: HENRY HEILIGER ET AL., APPELLEES.

FILED JUNE 5, 1936. No. 29570.

*Sanden & Anderson* and *Arthur J. Nevins,* for appellants.

*Dorsey, Baldrige & Chew, John J. Ledwith* and *Loren H. Laughlin, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PER CURIAM.

This is an action to recover from the makers and the guarantors of a 4,000-dollar note the amount due payee thereon.

The note was dated June 26, 1929, and was payable 90 days after date, to the Live Stock National Bank, Omaha, plaintiff. The makers were H. P. Heiliger and Henry Heiliger. The guaranty, a separate instrument dated June 26, 1929, was signed by the makers of the note and also by O. F. Heiliger, C. E. Sanden, Frank J. Marshall, and Clarence Emerson. To the extent of $4,000, guarantors, according to the terms of the guaranty, guaranteed prompt payment of all notes and renewals thereof that may have been heretofore, or may be hereafter, discounted, purchased by or pledged to the Live Stock National Bank by the First State Bank or H. P. Heiliger. This guaranty included the note in controversy. September 24, 1929, there was a payment of $500 on the 4,000-dollar note and the unpaid debt of $3,500 was renewed by another note for the latter sum.

Defenses were interposed. The parties waived a jury and tried the cause to the district court. The findings below were in favor of plaintiff. Judgment for $4,370

was rendered against all defendants. Guarantors Marshall, Sanden and Emerson appealed.

The appellants named, who were stockholders of the First State Bank, did not sign any note payable to plaintiff, and they take the position they established a complete defense to the action by pleading and proving that they never signed a completed guaranty; that the instrument signed by them was never delivered as a guaranty; that they signed it with the distinct understanding, known to plaintiff, that it was not to be a binding obligation or to be used as a guaranty until also signed by all other stockholders of the First State Bank; that a majority of the stockholders never signed it.

The propositions outlined required an examination of the evidential facts. The First State Bank was moved from Bethany to Lincoln. As a result of the change in location, the capital of the bank was impaired to the estimated extent of $4,000. There was no surplus or profit to meet the impairment. The executive officers of the First State Bank were Henry Heiliger, president; H. P. Heiliger, vice-president; O. F. Heiliger, cashier. By means of correspondence between H. P. Heiliger, vice-president of the First State Bank, and Alvin E. Johnson, vice-president of the Live Stock National Bank, plaintiff, there was negotiated a loan of $4,000 from the former bank to the latter bank to restore the loss of capital. Upon receipt of the 4,000-dollar note signed by H. P. Heiliger and Henry Heiliger and of the 4,000-dollar guaranty signed by Marshall, Sanden, Emerson, appellants, and others, plaintiff discounted the note. The proceeds, or $3,940.67, were, in the form of deposits, credited to the First State Bank's account in plaintiff's bank, thus increasing the deposits or credit account from $9,179.84 to $13,120.51. Later, September 24, 1929, there was a payment of $500 on the 4,000-dollar note and the unpaid debt of $3,500 was renewed by the note for that sum.

There is convincing evidence of an understanding among the executive officers of the First State Bank and Marshall,

Sanden and Emerson, stockholders, that the guaranty was not to become effective or to be used unless also signed by the other stockholders—a disregarded condition. This, however, was not necessarily a defense, if plaintiff, without knowledge or notice of the understanding, made the loan in good faith relying upon the guaranty. The guaranty was in fact signed by appellants. They trusted possession of it to H. P. Heiliger, vice-president of the First State Bank, who gave credence to it and delivered it to plaintiff with the note evidencing the loan. The district court found that plaintiff did not have knowledge of the condition on which appellants signed the guaranty and that the loan was made in good faith in reliance upon it. If that finding is sustained by sufficient evidence, it is equivalent to the verdict of a jury and will not be set aside unless clearly wrong.

For evidence that plaintiff was charged with knowledge that others were to sign the guaranty, appellants rely in part on the correspondence relating to the loan. On behalf of plaintiff, negotiations were conducted by its vice-president, Johnson. It is a fact that he once requested a guaranty signed by all the stockholders of the First State Bank, but he subsequently accepted the instrument in its present form. Inferences from exchanged letters are drawn by appellants to imply notice. In addition H. P. Heiliger testified to a conversation in which he said he told Johnson in advance that all the stockholders, except one, were willing to, and would, sign the guaranty. The district court, however, drew different inferences from the circumstances and gave greater weight to other evidence. On its face the guaranty contained nothing to indicate it was incomplete or that others were to sign it. In the letter transmitting it to plaintiff, it was offered as sufficient security for the loan. The evidence is that Johnson would not make the loan on the note itself. He required security and rejected a previous guaranty as insufficient. His requirement was inconsistent with the acceptance of a worthless instrument, knowing it to be such. If he knew

the condition on which the signatures of appellants were procured, the guaranty would not protect the loan. In the correspondence between the banks, there is no direct evidence of plaintiff's knowledge of the condition on which appellants rely as a defense. If inferences sufficient to charge Johnson with notice or to put him on inquiry could be drawn from the correspondence or oral evidence, the contrary was stated in direct and positive testimony by Johnson himself that he was not at any time or from any source informed in advance that the guaranty was not to be binding unless signed by all the stockholders of the First State Bank. He testified further that no suggestion of such a condition was ever made to him by H. P. Heiliger. This testimony of Johnson is consistent with his duties as vice-president and with his established purpose to require security for the loan. It was believed by the trial court and the evidence as a whole sustains the findings below on this phase of the case.

Another defense presented by appellants is estoppel by action of the Live Stock National Bank, plaintiff, in accepting $500 as a payment by the First State Bank on the 4,000-dollar note; in charging the account of the First State Bank in the Live Stock National Bank with the amount due on the 3,500-dollar note as payment of the debt; in marking that note paid; in surrendering both notes and the guaranty to the First State Bank; in electing to pursue to judgment a different and inconsistent remedy in a former action.

The 4,000-dollar loan was in reality an obligation of H. P. Heiliger, who signed the note therefor, and not the debt of the First State Bank. As already stated, the guaranty included the note signed by H. P. Heiliger and the renewal thereof. This individual debt was ostensibly paid with the money or credit of the First State Bank. Plaintiff herein was a participant in the conversion and was answerable for the tort. Later, the First State Bank was closed for insolvency and the receiver sued the makers of the 4,000-dollar note and the Live Stock National Bank,

plaintiff herein, for the conversion. The latter interposed as a defense to the former action the plea that the loan was an obligation of the First State Bank, but the adjudication was to the contrary. In the former action the receiver recovered a judgment against the Live Stock National Bank for $4,370. *Bliss v. Live Stock Nat. Bank,* 122 Neb. 668, 241 N. W. 106; *id.* 124 Neb. 880, 248 N. W. 645. The Live Stock National Bank paid the former judgment, interest and costs, withdrew the two notes and the guaranty from the record thereof and introduced them as evidence in the case at bar. In the former action it was adjudicated in effect that the First State Bank did not owe the Live Stock National Bank $4,000; that the amount of money wrongfully taken from the First State Bank to pay the individual debt of its officers should be restored to the receiver. With the former judgment in full force, there was a failure of consideration for the acceptance of the $500, for charging the deposit account of the First State Bank with $3,500 as payment of the renewal note and for surrendering the two notes and the guaranty. As a result of the former adjudication, the original debt and the guaranty remained unsatisfied obligations of H. P. Heiliger and guarantors. The vice-president of the Live Stock National Bank had notice in writing that the purpose of the loan was to restore the impairment of capital and he had no authority to lend the Omaha bank's funds to accomplish the conversion of the First State Bank's money to pay individual debts of its officers. *Bliss v. Live Stock Nat. Bank,* 122 Neb. 668, 241 N. W. 106; *id.* 124 Neb. 880, 248 N. W. 645. The defensive plea that the loan was a guaranteed debt of the First State Bank to plaintiff was not a remedy. It was unavailing. It was a mere assertion of a defense having no legal existence. It was not, therefore, an election between remedies, amounting to an estoppel to demand relief from the signers of the valid unpaid note and their guarantors. The law has been stated as follows:

"One is not precluded from resorting to a remedy which the law gives him because he has attempted to avail him-

self of one to which he was not entitled." *State v. Bank of Commerce*, 61 Neb. 22, 84 N. W. 406. See, also, *Stone v. Snell*, 86 Neb. 581, 125 N. W. 1108, and *Henley v. Live Stock Nat. Bank*, 127 Neb. 857, 257 N. W. 244.

The findings of the district court in favor of plaintiff on the issues of estoppel and election of remedies conformed to the evidence and the law and are free from error.

The answers of appellants to the petition of plaintiff contain counterclaims for damages based on allegations that plaintiff by conversion of funds of the First State Bank caused its insolvency and thus destroyed the value of bank stock owned by them. Orders striking these counterclaims from the answers are challenged as erroneous. The statute authorizing a counterclaim provides that it "must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim, or connected with the subject of the action." Comp. St. 1929, sec. 20-813. A text on this subject states the law as follows:

"If the counterclaim set up by defendant is not connected with the subject of the action and does not arise out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, it is not proper under statutory provisions authorizing it in such cases." 57 C. J. 414.

"The connection must not be casual or incidental; it must be immediate and direct, such as may be assumed to have been contemplated by the parties in their dealings with each other." 57 C. J. 415.

As stated in the petition in the case at bar, the foundation of plaintiff's claim against the defendants who are appellants is an unperformed contract in which they guaranteed to plaintiff the prompt payment of discounted notes. Appellants and guarantors were not parties to the conversion nor to the note which they guaranteed. The guaranty was general, applying to all notes and renewals

thereof that may have been heretofore, or may be hereafter, discounted, purchased by, or pledged to, the Live Stock National Bank by the First State Bank and H. P. Heiliger. The conversion pleaded did not arise out of the contract of guaranty and was not immediately and directly connected with it. It follows that error does not affirmatively appear in the orders striking the counterclaims from the answers.

Assigned error prejudicial to appellants has not been found in the record.

AFFIRMED.