REALTY INVESTMENT COMPANY, APPELLANT, v. WILLIAM A. SHAFER, APPELLEE.

FILED SEPTEMBER 28, 1912.    No. 17,091.

1. **Vendor and Purchaser:** SALE OF LAND: RESCISSION: REPRESENTATIONS. A purchaser of land, to justify a rescission on account of a misrepresentation, must show in some manner that it was material and misled him to his injury and damage.

2. ———: ———: ———: ERRONEOUS STATEMENT OF VALUE. As a general rule a mere erroneous statement of value, when made by the owner of land in an effort to sell it, is not actionable.

3. ———: ———: ACTION FOR PRICE: DEFENSE OF FALSE REPRESENTATIONS. Where defendant, in a suit on a note executed by him and delivered to plaintiff in part payment of the purchase price of land, pleads that he was induced to make the purchase by means of false representations of plaintiff in regard to the character of the land, he must, in establishing that defense, prove, among other things, facts or circumstances showing that he was entitled to rely on such representations.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed*.

*Hall & Bishop* and *G. W. Lewis,* for appellant.

*George A. Adams* and *Morning & Ledwith, contra.*

ROSE, J.

This is an action on a promissory note for $840. Defendant agreed to buy from plaintiff a quarter-section of land in South Dakota for $5,200, and paid $200 down. Later he executed a formal contract of purchase and a series of notes for the remainder of the purchase price. The note in controversy is the first of the series. It bears date August 21, 1909, and fell due December 1, 1909. In his answer defendant admitted the execution of the note, but pleaded it was void on the ground that he had been induced to sign it by the false and fraudulent representations of A. H. Rait, who, as agent of plaintiff, conducted the negotiations leading up to the alleged fraudulent sale. The answer also contained a cross-bill demanding judgment for the amount of the cash payment. The charges of fraud consisted principally in the making of false representations that the land was situated 2½ miles from Wetonka; that land of like character was selling for $35 to $40 an acre, and that the tract in controversy was better than the average quarter; that it was free from alkali, gumbo or hard-pan; that there were stones upon the

surface, but not beneath it; that there was no waste land and that all could be cultivated; that the land was worth $32.50 an acre; that plaintiff's title was good; that the soil would produce an average of $32\frac{1}{2}$ bushels of wheat to the acre and a large amount of flax; that the soil was fertile, rich and deep. It is also pleaded in the answer that defendant was unacquainted with the land or the locality; that he saw the land a few moments only and had no opportunity to investigate it sufficiently to determine whether or not it was as represented; that Rait claimed to be well acquainted with the land and the locality, and that he had actual, personal knowledge of all matters upon which representations were made; that defendant informed Rait he knew nothing about the land and would have to rely upon Rait's word in regard to it, and was assured by him that his statements could be relied upon and that he would guarantee them to be true; that so relying on them and believing them to be true, while in ignorance of the facts, he entered into the contract of purchase; that after discovering the fraud defendant offered to rescind the contract. All fraud charged was denied by a reply. The case was tried to a jury. Plaintiff's action was dismissed, and judgment was rendered in favor of defendant on his cross-bill for $200. Plaintiff has appealed.

The principal question argued is the insufficiency of the evidence to sustain the verdict.

Can the verdict be sustained on proof that Rait told defendant the land was $2\frac{1}{2}$ miles from Wetonka? Defendant testified that such a statement had been made, but it was denied by Rait. In any event it is undisputed that defendant, about mid-day, before he signed the contract of purchase or the note, went in an automobile directly from the land to Wetonka and there examined a map showing the exact distance. The evidence is uncontradicted that he had himself an accurate source of information, and that Rait pointed out to him the location of the land and the town of Wetonka on a map showing the distance between. Moreover, the abstracts fail to show that the

distance from Wetonka affected the value of the land, or
that defendant suffered injury through the representation,
if falsely made.  For the purpose of rescission, it was in-
cumbent on defendant to show in some manner that the
statement was material and that he was thereby misled to
his injury and damage.  *Jakway v. Proudfit,* 76 Neb. 67.
On this issue there is a failure of proof.

Can the verdict be sustained on proof that the market
value of land of like character was misrepresented?  If
such representations were made, there is no evidence that
they were false.  Besides, the issue as to the market value
of land was withdrawn from the jury by an instruction of
the trial court.

Can the verdict be sustained under the charge that Rait
falsely represented that the land was free from alkali and
hard-pan?  In support of these and other allegations of
the answer, defendant testified he was told by Rait:  "I
will guarantee you there is no alkali or gumbo in this soil.
Wherever you find a clay subsoil, as I have told you be-
fore, you will not find any gumbo or alkali."  He further
testified Rait represented to him that the surface was
loam with a clay subsoil; that there were stones on the
surface, but none under it, and that, when they were
picked off, the place would be free from stones; that the
water on the surface was not alkali water; that a draw
crossing the land gave good drainage; that "there is as
fine land as there is under the sun;" that "it was as good
land as there was under the sun for crops;" that he would
guarantee the land to be as represented.  In testifying,
defendant also stated that he told plaintiff he must rely
on him; that he did so and believed Rait's representations
and relied on them; that Rait said he was familiar with
the land and the surrounding country; that defendant was
not; that, when defendant was on the land to inspect it,
he was hurried away by Rait and did not have an oppor-
tunity to complete his inspection.  All of the testimony
tending to prove misrepresentations is emphatically denied
by one or more witnesses.  Whether it is sufficient in this

54

case to justify a rescission of the sale, or to sustain the verdict, depends upon the facts and circumstances proved and the rules of law applicable thereto.

Defendant was 46 years old, and had been farming near Lincoln for 26 years. His own story is that in August, 1909, he went with two of his neighbors and friends to Wessington Springs, South Dakota, to look at land, and to buy a tract, if he found one to suit. He was also accompanied by two real estate agents, Hutchinson and Allen. The party spent two days inspecting lands near Wessington Springs, but defendant declined to make a purchase because the lands offered for sale were too rough and hilly to suit him. Afterward he went with his two friends and Allen to Aberdeen, and by the latter was introduced to Rait, who was an entire stranger. To Rait defendant stated he would buy a piece of land, if he found one to suit him, and he was taken in an automobile on a tour of inspection. On the trip Rait occupied the front seat with the chauffeur. Defendant sat in the rear seat with his two friends. Three tracts of land were inspected. In regard to the first, defendant testified Rait guaranteed that it was free from alkali, but that he did not buy it because he thought there were too many buffalo-wallows, that they represented alkali, and that the land did not suit him. He looked at the second piece, but, according to his own testimony, did not buy it because there were too many stones on it. Up to this time the evidence is undisputed that he acted on his own judgment as to the character of the land, taking into consideration buffalo-wallows as indicating the presence of alkali. The third tract is the land in controversy. When they arrived, Rait remained at the automobile and defendant went onto the land with one of his friends. There was a swale on the quarter-section, and the rough land in connection with it was variously estimated by the witnesses to be from three to eighteen acres. Defendant admits that he crossed this swale, and he afterward referred to buffalo-wallows therein. He therefore saw the swale itself and the land on both sides

of it. During his inspection Rait remained at the automobile on the highway and never mentioned the land. Defendant's own testimony is that, when he returned to the automobile, Rait asked him how he liked it, and that he replied: "I told him it looked pretty fair, and we might mark that down and look further." It was near noon, and the party went to Wetonka, defendant still occupying the rear seat with his two friends. Shortly after they arrived at the hotel there, defendant signed an agreement to buy the land and gave Rait a check for $200, with the understanding that what had been done was subject to the approval or rejection of plaintiff, and that a formal contract might be drawn and signed later. Defendant subsequently executed and acknowledged such a contract and signed notes for the balance of the purchase price. According to the proofs adduced by him, the alleged fraudulent representations were made on the way from the land to Wetonka and at the hotel there, after defendant had made his inspection with his friend and after he had told Rait that the land looked pretty fair. His excuses for not making further investigation are that he was told by Rait "to hurry back," "to hurry for dinner," that Rait signaled for him to come back, and that he was afraid he would be left on the land. Under the circumstances these excuses are without merit. He had made a long trip to inspect and buy land. He was an experienced farmer. He had assumed on the same trip to buy or to reject land on his own inspection. He was under no sort of restraint. He was a free agent. His two friends were with him. He did not sign the notes or the final contract to purchase for several days, and could have returned to the land from the hotel before doing so, or, if not satisfied with the examination already made, he could have refused to sign the notes. When he first asked Rait to rescind the contract, he gave as a reason that his wife was unwilling to move to the land and that he could not pay the notes. Later he urged defects in the title, but did not attempt to establish them in making his defense. Finally he defended the suit on the ground of fraud.

For reasons well understood, it is a general rule that a mere misrepresentation of value, when made by the owner of land in an effort to sell it, is not actionable. *Dresher v. Becker,* 88 Neb. 619; *McKnight v. Thompson,* 39 Neb. 752. In defending the suit on the ground that the note was procured by fraudulent representations, it was not only necessary to prove that the representations were made, that they were false and that he believed them and relied upon them, but it was equally essential to show in some manner the existence of circumstances entitling him to rely on them. *Runge v. Brown,* 23 Neb. 817. This doctrine is not condemned in *Hoock v. Bowman,* 42 Neb. 80, wherein it was held: "A purchaser of real estate has a right to believe and rely upon representations made to him by his vendor as to the character, quality, and location of the property, when the facts concerning which the representations are made are unknown to the vendee." In that case the facts were different. In the present case defendant knew that Rait was a stranger whose only duty in making the sale was to properly represent his principal. In negotiating at arm's length for the purchase of a farm, an experienced farmer who makes an inspection for himself cannot idly abandon responsibility for his own conduct, the prompting of his own senses, his skill and knowledge, and his opportunity for investigation, and make out a case of fraud by merely testifying that, under the circumstances of a case like this, he told an utter stranger, with whom he was dealing, he would have to rely on his representation, that they proved to be false as made, that he believed them and relied upon them, and that the stranger had said he would guarantee the representations to be true. There is reason for the rule which requires him to show a substantial basis for such reliance. There was no confidential relation existing between the parties to the negotiations. Rait was known to be the agent of plaintiff. The principal was entitled to the services of the agent and should not be deprived of them by any unreasonable credulity on the part of defendant, either real or

simulated. Defendant's own testimony shows that he was competent to determine for himself the character and condition of the land. It was open to his observation. The herbage, the water, the stones and other surface indications told their own story. If they were not sufficient, his own proofs do not show that he was either deceived or coerced into his failure to examine the soil itself. He started out on his tour of inspection with the declared purpose to examine land and to buy a tract, if it suited him. He rejected two pieces. According to his own statements he disregarded on the same trip a similar representation as to other land. He examined the tract in controversy and gave no reasonable excuse for not making a satisfactory inspection, if he did not do so. The final contract of purchase and the note in suit were signed after he had an opportunity to make a re-examination. They should not be held void without something substantial to show that he had a right to rely on the false representations pleaded, if made. Business transactions, when deliberately reduced to writing and solemnly executed, should not be thus lightly invalidated. For failure of proof in the respect pointed out, the verdict is not supported by the evidence.

Material misrepresentation as to stone is not proved, and the same may be said of the charges that Rait falsely represented there was no waste land and that all could be cultivated. The allegations that the land was falsely represented to be worth $32.50 an acre and that plaintiff's title was good were not proved, and the trial court withdrew those issues from the jury. It is clear that the verdict cannot be sustained under the representation that the soil would produce an average of $32\frac{1}{2}$ bushels of wheat to the acre and a large amount of flax. Proof that these representations were made does not appear in the abstracts; but, if they were made, they would, under the circumstances of this case, amount to no more than an expression of opinion not amounting to actionable fraud, since both parties understood that the land had never been tilled.

What has already been said in regard to representations relating to the character of the soil disposes of the defense that it was falsely represented to be fertile, rich and deep.

It is also argued that Rait was guilty of fraud in entering into a secret agreement with the two friends of defendant to pay them a commission in case of a sale. An examination of the abstracts in connection with the bill of exceptions fails to disclose evidence to sustain this charge.

The evidence being insufficient to sustain the verdict, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.