TENA E. GLISSMANN, APPELLEE, V. EDMOND H. ORCHARD ET AL., APPELLANTS: SERENA E. GRABOW ET AL., APPELLEES.

297 N. W. 612

FILED APRIL 18, 1941.   No. 30934.

*Edmond H. Orchard,* for appellants.

*Gray & Brumbaugh, Raymond E. McGrath* and *Samuel L. Winters, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and LANDIS and MUNDAY, District Judges.

PAINE, J.

This was an action in equity, brought by Tena E. Glissmann against Edmond H. Orchard and wife, defendants, for a declaratory judgment to settle the amount of her indebtedness under a lease and option agreement, which had

heretofore been construed by the court to be an equitable real estate mortgage. Plaintiff also asked for an accounting with the defendants Edmond H. Orchard and wife to determine the exact amount which they had invested in the property, which amount plaintiff should pay in order to settle with the defendants in full.

The plaintiff alleges generally that on March 28, 1929, the lease and option agreement, involving the Valley View Golf Course west of Omaha, near Ninety-eighth and Center streets, consisting of 70 acres, with improvements thereon, was entered into by and between Serena E. Grabow and John J. Grabow and the Orchards; that the district court had previously determined that said agreement was an equitable real estate mortgage in favor of the defendants Orchard and against the plaintiff; that in another action in the district court, between the same parties as in the case at bar, a decree had been entered, finding that so long as payments continued to be made promptly when due, according to the terms of the agreement, they will be entitled to the possession of the Valley View Golf Course, on which land they have expended large sums of money in improving the same since the agreement was entered into with Orchard; that upon payment by her of the sums due Orchard she is entitled to a deed of conveyance of all of said real estate from the Orchards, and to the cancelation of all claims the Orchards have by virtue of the agreement.

It is further alleged in the plaintiff's petition that in signing said agreement Serena E. Grabow and John J. Grabow were acting as the agents of the plaintiff. The petition charges that the defendants Orchard, at the time of signing said agreement, by fraud and misrepresentation and with intent to deceive, represented that the total amount they had invested in said property, including payment of taxes thereon, was the sum of $26,000. The plaintiff did not learn until a year before bringing this suit that the total payments that the defendants Orchard had invested in said property amount to the full sum of $18,085.40, and not the sum of $26,000, as represented by them.

Plaintiff further charges that during all of these years she has overpaid the defendants Orchard $505.19 a year in interest, which represents the difference between the annual interest on $26,000, which they charged her at 6 1/3 per cent. interest, and the true interest on $18,085.40, making the total overpayments in interest amount to the sum of $5,051.90, and that she is entitled to have her indebtedness reduced by the amount of these overpayments of interest, which, deducted from the amount actually paid by the Orchards, leaves a balance of $13,033.50, and therefore plaintiff asks for an accounting.

Upon the motion of defendants Orchard, it was ordered by the court that Henry C. Glissmann, Serena E. Grabow, John J. Grabow, Harold W. Glissmann and Hans Glissmann be made additional parties defendant.

On April 1, 1939, an answer and amended cross-petition was filed by Edmond H. Orchard and Harriet, his wife, in which it is admitted that Serena E. and John J. Grabow have held a lease and option from the Orchards upon the premises described in the lease and option, copy of which is attached as exhibit A; admitted that the district court entered a decree in the case of Tena Glissmann versus the Grabows and Orchards, and they deny every other allegation contained in the petition. Defendants Orchard allege that from the decrees so entered no appeal has been taken within the time allowed by the statute, and that the statute of limitations has run, and the time for appeal has expired.

By way of cross-petition, defendants allege that the lease and option held by Serena E. Grabow and husband John, and in which the plaintiff, Tena E. Glissmann, claims to have an interest, has expired, together with extension under the moratorium law; that the plaintiff and others have terminated said option by failing to comply with its terms; that no proceedings are now pending for possession of the property; that whatever interest the plaintiff and others may have in said property is junior and inferior to the rights and interests of the Orchards; wherefore, Edmond H. Orchard and wife, Harriet, pray that the action of the

plaintiff on charge of fraud and misrepresentation be dismissed, that title to the premises described be forever quieted in them, and that Tena E. Glissmann, Henry C. Glissmann, Harold W. Glissmann, Hans C. Glissmann, Serena E. Grabow and John J. Grabow, and each of them, be forever barred and foreclosed of all right, title and interest in said premises, and, further, that the court give direction to said Orchards as to the restoration of the remainder of the $1,500 equity which Serena E. Grabow has in a certain five acres described in the lease and option agreement, and that a writ of assistance be given to the said Orchards to put them in possession of the premises.

Serena E. Grabow and John J. Grabow, by way of answer and cross-petition filed May 19, 1938, admit that a lease and option were entered into between the defendants Edmond H. Orchard and his wife, Harriet, as parties of the first part, and Serena E. Grabow and husband, John, as parties of the second part; admit that the decree was entered as alleged in the petition, and deny all other allegations not herein admitted; admit that, in making the original bid of $23,725 at sheriff's sale, Serena E. Grabow made such bid as agent of, and for the accommodation of, the plaintiff, and upon the assurance of plaintiff that the sum so bid would be furnished by said plaintiff when needed to comply with the terms of the bid; that when plaintiff failed to produce the sum so bid, Serena E. Grabow, in order to avoid being punished for contempt of court, entered into the lease and option with Orchards, and was compelled to pledge her personal estate, as therein indicated, and as found by the court in its decree of June 6, 1930, at great financial loss to said Serena E. Grabow, and further allege that, when plaintiff failed to exercise the option so procured for her benefit, the district court on February 12, 1934, by declaratory judgment held, among other things, that the defendant Serena E. Grabow became the holder of an equitable real estate mortgage. Serena E. Grabow specifically denies that the terms of rental fixed in the lease were based upon any fixed sum of money paid by

the Orchards in consideration of the assignment to them of the bid made by Serena E. Grabow at the sheriff's sale, and that the rights of the plaintiff should be quieted in the defendants Orchard, and the Orchards be directed to surrender and deliver up to Serena E. Grabow all property held by them as collateral under said option and lease, and that said option and lease be declared forfeited by reason of default upon the part of the plaintiff to comply with the terms and conditions thereof, and that the defendant Serena E. Grabow recover the collateral remaining in the hands of the said Orchards.

On October 31, 1939, a decree was rendered in the district court, setting forth that a trial was had, beginning on June 26, 1939. The court finds that the lease and option agreement between Serena E. Grabow and Edmond H. Orchard and wife was executed by Serena E. Grabow as agent for Tena E. Glissmann, that the district court in a prior action had determined that the amount which Tena E. Glissmann was to repay to the defendants Orchard under said lease and option, construed as an equitable mortgage, was the precise sum advanced by the Orchards to clear said premises from encumbrance.

The court further finds that Edmond H. Orchard, at the time of signing said lease and option agreement, by fraud and misrepresentation, with intent to deceive the plaintiff, falsely represented that the total sum invested by said Orchard was the sum of $26,000, and that the total amount actually invested by the defendant Orchard was only $18,-299.82, and that Edmond H. Orchard offered no proof to show that he had invested any other sums than $18,299.82. The court denies the prayer of the plaintiff for a credit of $5,051.90 as interest overpaid.

The court further finds that the Orchards have accepted the rental payment of $1,650 per annum, and thus renewed the operation of said lease and option during each year in which said rental was paid. The court finds that Tena E. Glissmann, plaintiff, is not in default with reference to said lease and option.

The court further directs that Orchard return to Serena E. Grabow any property given him by way of collateral security in connection with said lease and option agreement. It is further ordered that, when plaintiff Tena E. Glissmann pays to the defendant Edmond H. Orchard the sum of $18,299.82, said Orchards are directed to execute a warranty deed to said premises to the plaintiff, and it is further ordered that the cross-petitions of Serena E. Grabow and husband and Edmond H. Orchard and wife be and they are dismissed, and that the costs shall be paid by Edmond H. Orchard and wife.

Thereupon Edmond H. Orchard and wife filed motion for a new trial on the ground that the decree was not sustained by sufficient evidence, is contrary to law, and allege that the court erred in many rulings during the trial, and that the decree is not within the pleadings and evidence submitted.

Other phases of the litigation between some of the parties involved herein have been before this court in the following cases: *Bauermeister v. McDonald*, 124 Neb. 142, 247 N. W. 424; *Glissmann v. McDonald*, 128 Neb. 693, 260 N. W. 182; *Glissmann v. Happy Hollow Club*, 132 Neb. 223, 271 N. W. 431; *Glissmann v. Bauermeister*, p. 354, *post*, 297 N. W. 617.

The evidence discloses how Mrs. Serena E. Grabow came to be a party to the contract with Orchards. She was the sister of Henry C. Glissmann and a daughter of Hans C. Glissmann. There was a mortgage on Valley View Golf Course property, which had been foreclosed, and the property was being sold. The night before the sheriff's sale Henry C. Glissmann and his wife, Tena E. Glissmann, came out to Serena E. Grabow's home, five miles west of Louisville, and urged them to make a bid at the sale the next day. Mrs. Grabow refused to do it, and they said that her husband John could not do it because he was under foreclosure too, and they said Mr. Robertson, the attorney, thought Serena E. Grabow could do it, and her brother Henry agreed to finance the bid, and they took her to Omaha

that night. The next morning they took her to the attorney's office, and he told her that her brother Henry was going to lose the Valley View Golf Course, and she finally went over to the east entrance of the courthouse with their attorney, Mr. Robertson. She said that Judge Foster made it very plain that there was to be no false bid, that anybody who bid was responsible for the bid, and that Mr. Orchard bid $23,700, and then Attorney Robertson stepped up and bid $23,725 in her name, and there was no other bid, and she went back to the attorney's office, where her brother Henry and his wife, Tena, were waiting for them, and the attorney prepared an assignment of the bid to Tena E. Glissmann, which she signed and left with the attorney, and she understood that Henry had the money to carry out the bid, but after lunch the same day they returned to the attorney's office and she was first told that Henry did not have the money to carry out the bid.

Mrs. Grabow testified that she had never attended a sheriff's sale before, and this was the first bid ever made by her. She was then urged to go up and see Mr. Orchard, a teacher at the Technical High School, to see if he would leave in $15,000 of his money to help out on the bid, and they went and talked, but he would not agree to that, and then they drove home to their farm at Louisville.

Letters were written to them that the judge was very anxious to have the bid confirmed. Attempts were made to get a bond issue through Rufus E. Lee, and her brother Henry attempted to furnish security, but failed, and wanted her to help him out and put up her interest in her father's estate, but the bond deal fell through.

In a conference at the sheriff's office between William C. Nollman, Mr. Orchard and Mrs. Grabow, Mr. Nollman told Mrs. Grabow at that time that she was liable for contempt of court, and also subject to a jail sentence, on the bid she had been induced to make, and that the land might have to be resold at her expense, and then conversations were held toward getting Orchard to accept the assignment of the bid which had been made in the name of Serena E.

Grabow. Later Mr. Orchard and Mr. Nollman brought papers already prepared out to the Grabow farm west of Louisville, and Serena E. Grabow and Edmond H. Orchard signed a preliminary agreement in the presence of William C. Nollman, in which it was stated that she had that day assigned her bid to Orchard in the foreclosure suit of the Bank of Benson against Henry C. Glissmann. Orchard agreed to give her the first option to purchase the property, which option was to be entered into at any time within two months, in which she would pay the amount of her bid and additional sums amounting in all to approximately $25,000, on condition that Serena E. Grabow would put up security for the payment of the interest and carrying out the contract. Finally the option was to be executed and held until Mrs. Grabow delivered such security.

Mrs. Grabow's interest in the estate of her father, Hans C. Glissmann, was estimated by her at that time to be worth $6,500, and in a conversation with Henry C. Glissmann she was told that Orchard demanded $7,000 worth of securities to give the option, and Henry offered to put up five acres in lieu of her interest in her father's estate, but Orchard would not accept it under those conditions. Tena E. Glissmann objected to putting in her five acres, and bitter conversation followed. Henry wrote out the top part of an agreement on his typewriter, using the instrument relating to the proposed bond issue as a model, and then sewed this with a sewing-machine to the bottom part of the old bond contract that had been signed by the same parties.

This nondescript paper so made was marked exhibit No. 33, and received in evidence without objection. The top part, being the first paragraph, reads as follows: "That whereas it is to the mutual advantage of the contracting parties hereto, that the first party, pledge her share in the estate of the late Hans C. Glissmann, as security in connection with other securities offered so that the parties hereto can procure and complete, a certain deal in which E. H. Orchard, of Omaha Neb, is to take a deed to the 70

acres included in what is known as the Valley View Golf Links, located at about 98th and Center St, Douglas County Neb, and to lease the same back to Serena E. Grabow, and give a 5 yr option to buy same, at a price mentioned in contract entered into with E. H. Orchard, the option to be assigned to Tena E. Glissmann, wife of Henry C. Glissmann, now therefore:—"

The lower part of this agreement, on a different kind of paper and sewed with a sewing-machine to the upper part, provided that, in consideration of Serena E. Grabow pledging her share in her father's estate, Henry C. Glissmann would sell, assign and set over to her and her heirs all right, title and interest of Henry C. Glissmann in his father's estate, and grant her and her heirs the right to receive, receipt for, and acknowledge all papers in connection with the share of Henry C. Glissmann in the estate of his father, and in consideration of his assignment to her of all his interest in the estate of his father she agrees to execute any instruments necessary to pledge her share in the estate of her father. Then appear the signatures of Serena E. Grabow, party of the first part, and Henry C. Glissmann, party of the second part, with no witness, nor acknowledgment of the signatures, but at the bottom of the paper appears this statement:

"The above assignment to Serena E. Grabow on the part of Henry C. Glissmann is hereby approved and I hereby acknowledge and confirm such assignment, this 24 day of January, 1929.

"Witness to signature.       (Signed) Tena E. Glissmann.

"(Signed)    J. J. Grabow."

Serena E. Grabow testified that she had never received any property from Henry C. Glissmann, or from the trustees holding his interest in his father's estate, to protect her in the collateral she gave to Orchard, which was all of her interest in her father's estate, although Henry C. Glissmann and his wife, Tena, have at all times resided on this Valley View Golf Course. Whenever there was a default in the payments of rent, Orchard wrote letters to

Serena E. Grabow that she must keep up her payments on the option agreement, to protect which she had deposited all of her interest in her father's estate, and she was compelled to beg Henry and his wife to make these payments promptly. Letters and evidence show that Serena E. Grabow and her husband were in a desperate shape financially to meet their own obligations, because she had put up all of her interest in her father's estate to Orchard on his contract for the sole benefit of her brother Henry and his wife, the plaintiff herein.

Edmond H. Orchard testified that he was still holding the share of Serena E. Grabow in the estate of her father, which she had pledged back in March of 1929.

"Fraud is never to be presumed. It must be proved. A creditor of a vendor seeking to invalidate a sale upon the grounds of fraud must prove facts from which a legitimate inference of fraudulent intent can be drawn. Evidence simply justifying a suspicion is not sufficient. *Jaege v. Kelley*, 52 N. Y. 273, followed." *Bank of Commerce of Grand Island v. Schlotfeldt*, 40 Neb. 212, 58 N. W. 727. See, also, *Meyer v. Schmidt*, 135 Neb. 850, 284 N. W. 337; 12 R. C. L. 237, sec. 8.

We fail to find any evidence whatever of fraud on the part of Orchard.

He who comes into equity must come with clean hands, and "while a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversies." 1 Pomeroy, Equity Jurisprudence (3d ed.) sec. 398.

In our opinion, the plaintiff and her husband are bound to settle with Orchard on the terms of the amount stated in the option contract. The plaintiff would be barred ordinarily by her laches, except for the fact that payments, which have dragged along over the years, have been accepted by Orchard.

The court finds that the indebtedness on the lease and option of Orchard is in the amount stated therein, of $26,000, and that, in order to retain said premises under the theory that said lease and option are an equitable mortgage, Orchards should be paid $26,000, as provided therein. The date of redemption, fixed in the decree of the district court, having expired nine months from October 31, 1939, said redemption date is fixed at three months from the date of the mandate herein. Costs are taxed to plaintiff.

AFFIRMED AS MODIFIED.