THOMAS RUSSO ET AL., APPELLANTS, V. FRED E. WILLIAMS
AND CORA B. WORTH, EXECUTORS OF THE ESTATE OF GEORGE
E. WILLIAMS, DECEASED, ET AL., APPELLEES.

71 N.W. 2d 131

Filed June 17, 1955.   No. 33665.

*Dryden & Jensen* and *Paine & Paine,* for appellants.

*Ward W. Minor, Fitzgerald, Hamer, Brown & Leahy,* and *Blackledge & Sidner,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Thomas Russo and Elizabeth Russo, husband and wife, brought this action in the district court for Buffalo County against Fred E. Williams and Cora B. Worth, executors of the estate of George E. Williams, deceased. The purpose of the action is to rescind a contract entered into by the plaintiffs with these defendants for the purchase of a motel property located in Kearney, Nebraska. The basis for the action is the claim that Fred E. Williams, one of the executors, made false and fraudulent representations about the property in order to induce plaintiffs to buy it and that plaintiffs, relying thereon, were induced to do so. The trial court found against the plaintiffs and dismissed their action but granted defendants specific performance of the contract on the basis of the escrow agreement entered into pursuant thereto, as prayed for in their cross-petition. Plaintiffs filed a motion for new trial and have perfected this appeal from the overruling thereof.

The Fort Kearney National Bank of Kearney, Nebraska, was also made a defendant. It is the escrow agent of the parties for the purpose of carrying out the provisions of the agreement, which provisions are more specifically set out later in this opinion. The bank has no interest in the controversy except to carry out the orders of the court entered herein. This it has agreed to do as is evidenced by its answer.

In regard to the matter complained of appellants alleged: "* * * the executor of the estate of Geroge (George) E. Williams, Fred E. Williams, made certain false and fradulent (fraudulent) representations to these plaintiffs for the purpose of inducing them to purchase said real estate, as hereinafter described and amongst

other things, represented to these plaintiffs with reference to said premises, as follows: (1) That said premises were free of termites and were in good condition. (2) That the plumbing in said premises was in good serviceable and working conditon. (3) That the furnace in the main office building was in good serviceable and workable condition. (4) That the entire premises were in good serviceable and working condition, and that said property was a good income property. (5) That the sewer and septic tank on said premises were in good working and serviceable condition."

They then alleged further: "* * * that said premises were not in fact in good condition; that they were infested with termites; that the sewer was not in good condition nor the septic tank therein; that the plumbing was in bad condition and corroded; that the furnace and stoker in the main office building was not in workable condition whatsoever; that in fact, said buildings and all of said premises were in bad condition, and operation of said cabin camp would necessitate the expenditure of large sums of money to place it back into condition to operate again."

This action, being equitable in character, is triable here de novo in conformity with section 25-1925, R. R. S. 1943, which requires this court to: "* * * reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof." See, also, O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403; Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393; Krelle v. Bowen, 128 Neb. 418, 259 N. W. 48.

That rule is, however, subject: "* * * to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their

manner of testifying and must have accepted one version of the facts rather than the opposite." Rettinger v. Pierpont, *supra.* See, also, O'Brien v. Fricke, *supra;* Krelle v. Bowen, *supra;* Chitwood Packing Co. v. Warner, 138 Neb. 800, 295 N. W. 882.

This latter has particular significance here for a careful consideration of the testimony of the appellants' leaves one in doubt as to just how much credence can be given to parts thereof.

George Edward Williams, also referred to as George E. Williams, died on November 13, 1951, the owner of the Midway Auto Court, the property herein involved. It consists of about 3 acres of land located in the eastern part of Kearney, Nebraska, on which are located the following buildings: One combination residence and office building which is two stories high and has a basement, 20 one-room units referred to as cabins, and a two-story building used for storage purposes. We shall hereinafter refer to the combination residence and office building as the residence-office building. In addition to the above improvements used for motel purposes it also has space available and rented for the use of trailers. The address of the motel is 1620 East Twenty-fifth Street, Kearney, Nebraska.

George Edward Williams, whom we shall herein refer to as the deceased, purchased this motel property in the early part of 1946. Since 1928 he had been a rancher, living on his ranch located some 40 miles northeast of Douglas, Wyoming. He sold this ranch when he bought the motel property. He moved into the residence-office building located thereon and continued to live therein and operate the motel business until his death.

The deceased was, at the time of his death, about 76 years old. He was not married. He left a brother, Fred E. Williams, and a sister, Cora B. Worth, surviving. He died testate and in his will, which was allowed by the county court of Buffalo County and admitted to probate, nominated his brother and sister as executors.

They qualified as such and are now, and have been since December 14, 1951, the duly appointed, qualified, and acting executors of his estate. We shall herein refer to them as the executors.

The deceased's will directed the executors to sell all real estate and personal property not specifically disposed of therein. The motel property was not specifically disposed of by the will. Accordingly, in January 1952, the executors started to advertise it for sale. They put an ad in a Grand Island paper. The appellants saw this ad and contacted the executors. This was about the middle of March 1952. As a result of negotiations that followed they entered into a contract for the purchase thereof on March 20, 1952. The consideration for the purchase of the motel property, together with all equipment and furnishings therein, with certain exceptions not here material, was $47,500 of which $5,000 was paid at the time the contract was signed. The balance was to be paid as follows: $20,000 at such time as the executors furnished an abstract showing merchantable title with all taxes paid, including those for 1951, same to be furnished on or before April 15, 1952, with the balance of $22,500 to be paid in the form of a first mortgage on the premises. This mortgage was to run for a period of 3 years and bear interest at 5 percent.

Abstracts to the property were furnished appellants but their counsel asked that certain requirements in regard thereto be met, particularly the payment of the federal estate tax. It was apparent these requirements could not be met by April 15, 1952. Possession was important to appellants as the tourist season was about to begin. In order to avoid any delay in this regard an escrow agreement was entered into. It is dated April 15, 1952. Therein the Fort Kearney National Bank of Kearney was named escrow agent. It agreed to act as such on April 17, 1952. Thereupon the parties delivered certain instruments to the bank and, in regard thereto, the escrow agreement provides: "* * * which

documents shall be held by said bank in escrow under the following instructions, to-wit: A. Abstract of title is now in the hands of abstractor for the purpose of making certain entries as requested by the purchasers in the opinion rendered by Paine & Paine, Attorneys of Grand Island, Nebraska. B. The Federal Estate Tax for the estate tax due from the estate of George E. Williams being probated in the County Court of Buffalo County, Nebraska, has not been determined, nor paid. C. When the above title is approved and Federal Estate tax determined and paid to the satisfaction of the purchasers, the Escrow Agent, upon being so instructed is to turn over to the purchasers the deed for the real estate and bill of sale for personal property and equipment, and to turn over to the sellors the sum of $20,000.00 and note & mortgage in amount of $22,500 as executors of the estate of George E. Williams."

The appellants went into possession on April 22, 1952, although, at their suggestion, Mr. and Mrs. Fred E. Williams had opened the motel during the week prior thereto. They have remained in possession and operated the motel property ever since. However, on September 8, 1952, appellants signed a notice of rescission which, immediately thereafter, they caused to be served on the appellees. Subsequent thereto, on September 29, 1952, they commenced this action.

Although appellants' counsel has never given his approval thereof we find the executors have furnished abstracts showing good merchantible title and have fully met the requirements of appellants' counsel in regard thereto, including the payment of federal estate tax. The federal estate tax was paid on July 2, 1952, and a certificate was obtained releasing the property from any estate tax lien on September 15, 1952. Thus the executors have fully performed the agreement and are entitled to the performance thereof unless good cause exists for denying it.

A party who has been induced to enter into a contract

by fraud has, upon its discovery, an election of remedies. He may either affirm the contract and sue for damages or disaffirm it and be reinstated to the position he was in before it was consummated. Rayburn v. Norton, 117 Or. 328, 243 P. 560.

As stated in 55 Am. Jur., Vendor and Purchaser, § 593, p. 986: "* * * equity may decree cancellation or rescission of a contract for fraud or misrepresentation constituting an inducement to its execution, especially when the legal remedy is inadequate, or the equitable relief by way of cancellation is more complete." See, also, State ex rel. Sorensen v. State Bank of Omaha, 128 Neb. 705, 260 N. W. 195; 66 C. J., Vendor and Purchaser, § 456, p. 813.

To maintain an action for rescission because of false representations the party seeking such relief must allege and prove what representations were made; that they were false and so known to be by the party charged with making them or else were made without knowledge as a positive statement of known fact; that the party seeking relief believed the representations to be true; and that he relied and acted upon them and was injured thereby.

" 'Fraud is never presumed, but must be established by the party alleging it by clear and satisfactory evidence.' Hampton v. Webster, 56 Neb. 628." Burnham v. Bennison, 126 Neb. 312, 253 N. W. 88. See, also, Krelle v. Bowen, *supra;* Davidson v. Crosby, 49 Neb. 60, 68 N. W. 338; Ish v. Finley, 34 Neb. 419, 51 N. W. 1031.

"In an action in which relief is sought on account of fraud, the burden of alleging and proving the existence of all the elements thereof is upon the party seeking such relief." Leichner v. First Trust Co., 133 Neb. 170, 274 N. W. 475.

However, in Rettinger v. Pierpont, *supra,* we said: " '* * * courts of equity do not restrict themselves by the same rigid rules as courts of law in the investigation of fraud and in the evidence and proofs required to

establish it. * * * the proof must be sufficient to satisfy the conscience of the chancellor or court that fraud is really existent, and to do this, it must be sufficient to overcome the natural presumption, which is always of considerable force, that men are honest and act from correct motives.' 19 Am. Jur., sec. 43, p. 66."

In this regard we said in Trebelhorn v. Bartlett, 154 Neb. 113, 47 N. W. 2d 374: "The general rule that fraud is not presumed but must be proved by the party alleging it does not mean that it cannot be otherwise proved than by direct and positive evidence. Fraud in a transaction may be proved by inferences which may reasonably be drawn from intrinsic evidence respecting the transaction itself, such as inadequacy of consideration, or extrinsic circumstances surrounding the transaction." See, also, Falkner v. Sack Bros., 149 Neb. 121, 30 N. W. 2d 572.

And in Herlan v. Bleck, 148 Neb. 816, 29 N. W. 2d 636, we said: "Direct evidence is not essential to establish fraud. It may be inferred from circumstances; but such inference must not be guesswork or conjecture, but the rational and logical deduction from the circumstances proved." See, also, Alter v. Bank of Stockham, 53 Neb. 223, 73 N. W. 667; Thurman v. City of Omaha, 64 Neb. 490, 90 N. W. 253; 24 Am. Jur., Fraud and Deceit, § 282, p. 128.

As stated in Glissman v. Orchard, 139 Neb. 344, 297 N. W. 612: " '* * * Evidence simply justifying a suspicion is not sufficient. * * *' Bank of Commerce of Grand Island v. Schlotfeldt, 40 Neb. 212, 58 N. W. 727."

Shortly after the deceased moved into and started operating the motel termites were discovered in some of the buildings. Sometime between when they were discovered and the spring of 1948 the deceased employed George H. Quackenbush, a local termite exterminator, to get rid of them. Quackenbush attempted to do so but it is apparent he was not completely successful in his efforts. After Quackenbush attempted to do so the

deceased became aware of the fact that there were termites still working in the buildings of the motel, as did others who worked for him.

On several occasions Fred E. Williams and his wife, as well as Cora B. Worth, visited the deceased at the motel and stayed with him in the residence-office building. We are satisfied none of them ever became aware of the fact that there were termites in the property nor do we think any of them became aware of that fact subsequent to his death and before the sale of the motel to appellants, although we are satisfied that termites did exist therein at the time of the sale.

Termites seem to work in places where they are not easily observed and apparently it takes somewhat of an expert to discover their presence unless they are discovered by chance or have advanced to the stage of destruction where the damage itself makes their presence known. We do not think such was the situation here at or before the time of the sale. It would appear that neither the appellants nor the executors had any knowledge of or ever had any experience with termites. They would apparently not have recognized them even if they had seen them. During the course of their negotiations, which led to the agreement, we find none of the parties thereto became aware of the presence of termites in the motel property.

During the course of the parties' dealings which, on four different days immediately preceding the contract, took place at the motel, Fred E. Williams, one of the executors, told appellants the place was in good or perfect condition and ready to be opened and operated. These statements were made in the presence of the other executor. We find appellants believed what Fred E. Williams said in this respect and were induced to enter into the agreement because thereof.

Thomas Russo, who was 49 years of age at the time of trial, is a native of New York City. There he worked in a watch factory as a material control clerk. In 1951

he came to Nebraska to marry Elizabeth Strasser. They were married on July 10, 1951. Subsequent to their marriage they lived in Grand Island, Nebraska, in her home located at 2007 West Louise Street. He lived there until they moved to the motel on April 22, 1952. While living in Grand Island he worked for 3 or 4 weeks in an ordnance plant doing the work of a laborer. He had never had any experience operating a motel.

Elizabeth Russo, the other appellant, has a high school education. She has worked as a theatre cashier, saleslady in a department store, operated a beauty parlor, and for 3 years took care of the desk in a hotel. The latter was in the Mayfair Hotel in Grand Island, which was then owned and being operated by her then husband, Harold G. Strasser. While taking care of the desk and office she hired the help and took care of the linens. She was not experienced in operating a motel.

The evidence shows both appellants were inexperienced in dealing with real estate; that they had never had any experience with termites; and that they had no knowledge of the damage termites can do.

Fred E. Williams, one of the executors, was 68 years of age at the time of the trial. He has been a rancher since 1908 and, at the time of the sale, was operating a cattle ranch near Medora, North Dakota, and a sheep ranch near Oakes, North Dakota. Formerly he owned and lived on a ranch joining that of the deceased some 40 miles northeast of Douglas, Wyoming. He sold this ranch in 1948 and moved to North Dakota where he is now living. During his visits with the deceased Fred never operated the motel nor did he do so after the death of his brother. He never made a careful check thereof and only observed it generally as he saw it while visiting or while showing it to some seven or eight prospective purchasers.

Cora B. Worth, the other executor, lives in Fairbury, Nebraska. She is 75 years of age and has been a widow for 40 years. She was present on some of the occasions

when the representations as to the condition of the motel were made by her brother Fred.

After the contract was entered into on March 20, 1952, and before appellees moved into the premises on April 22, 1952, Thomas Russo came to the motel on several occasions to do some work, principally painting the showers. He also had electric wall switches put in some of the cabins. However, it was not until the latter part of June 1952, about the 26th or 27th, that he first became aware of termites. At that time some stranger came to the place and showed him where they were in the basement of the residence-office building. Thereafter, on June 28, 1952, he found some himself while he was fixing a sill in the residence-office building. He showed them to his wife.

It is apparent, from what we have already said, that executor Fred E. Williams had no knowledge of the fact that termites existed in the motel property when he told appellants that the place was in good or perfect condition. However, knowledge in this respect is not essential if the statements made are such that they are material and relied on by the other party and induced him to act to his injury.

As early as Phillips v. Jones, 12 Neb. 213, 10 N. W. 708, this court held: "And if a party, without knowing whether his statements are true or not, makes an assertion as to any particular matter upon which the other party has relied, the party defrauded in a proper case will be entitled to relief."

And in Newberg v. Chicago, B. & Q. R. R. Co., 120 Neb. 171, 231 N. W. 766, we said: "This court was early committed to the doctrine: 'Whether in an action for damages for false representations it is necessary either to aver or prove the scienter, the authorities do not agree. The better rule, and the one adopted by this court, is that the intent or good faith of the person making false statements is not in issue in such a case.' Johnson v. Gulick, 46 Neb. 817. 'A purchaser of real

estate has a right to believe and rely upon representations made to him by his vendor as to the character, quality, and location of the property, when the facts concerning which the representations are made are unknown to the vendee.' Hoock v. Bowman, 42 Neb. 80. See Farley v. Weiss, 76 Neb. 402." See, also, Kuhlman v. Shaw, 91 Neb. 469, 136 N. W. 55; Gerner v. Mosher, 58 Neb. 135, 78 N. W. 384, 46 L. R. A. 244; Paul v. Cameron, 127 Neb. 510, 256 N. W. 11; Falkner v. Sacks Bros., *supra;* Linch v. Carlson, 156 Neb. 308, 56 N. W. 2d 101; Moore v. Scott, 47 Neb. 346, 66 N. W. 441.

As stated in Peterson v. Schaberg, 116 Neb. 346, 217 N. W. 586: "An instruction to a jury in an action for damages for false representation, which states in substance or in language naturally understood by a jury to mean that the defendant is not responsible for a misstatement of fact if he made it in good faith, is erroneous."

Were the statements made by the executor as to the condition of the motel property false statements of material facts upon which the buyers could rely or were they merely expressions of opinion?

It is stated in Beltner v. Carlson, 153 Neb. 797, 46 N. W. 2d 153: " 'To maintain an action for fraudulent representations, it is not only necessary to establish the telling of the untruth, knowing it to be such, or that it was told without knowledge of the facts, but also to prove that the plaintiff had a right to rely upon it, and did so rely, and altered his condition because thereof, and suffered damages thereby.' Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119.' " See, also, Linch v. Carlson, *supra.*

As stated in 23 Am. Jur., Fraud and Deceit, § 28, p. 784: "It is sometimes difficult to determine whether a given statement is one of opinion or one of fact, inasmuch as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties all have a bearing upon the question, and there may be a want of one or more of the con-

trolling circumstances. There is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances."

In Musgrove v. Eskilsen, 127 Neb. 730, 256 N. W. 883, we used language which has particular application here. Therein we said: "Whether representations as to the condition of a water plant are actionable, if false, or amount merely to an expression of opinion depends upon the facts of each particular case. In the instant case the statements made were in the nature of positive representations of an existing fact, the truth of which defendants were unable to ascertain even by an examination of the plant, * * *."

That such is also true in regard to real estate is evidenced by the same opinion, although we held therein that under the circumstances disclosed the buyer had no right to rely upon a representation made that the place was in first-class condition. The opinion discloses we arrived at that result because the buyer was experienced and had full opportunity to inspect the property and determine whether or not such statement was true. See, also, McKibbin v. Day, 71 Neb. 280, 98 N. W. 845; Sipola v. Winship, 74 N. H. 240, 66 A. 962; Phillips v. Jones, *supra;* Daniels v. Oldenburg, 100 Cal. App. 2d 724, 224 P. 2d 472; Falkner v. Sacks Bros., *supra;* Peterson v. Schaberg, *supra;* State ex rel. Sorensen v. State Bank of Omaha, *supra.*

In Herzog v. Capital Co., 27 Cal. 2d 349, 164 P. 2d 8, it was held, under the circumstances there shown, that fraudulent representations of corporate vendor's local manager that a dwelling house was "in perfect condition in all respects" were actionable as against contention that such representations were mere "sales talk."

"One of the essential elements of fraud practiced by means of false representations is that the representation must be concerning a matter material to the contract." Linch v. Carlson, *supra*. See, also, Beltner v. Carlson, *supra*.

The fact that buildings have termites in them is a matter of serious concern and materially affects their value is beyond question. As already set out appellants were inexperienced as to real estate and knew nothing of termites and their propensities.

"A person is justified in relying upon a representation made to him where the representation is a positive statement of fact and where an investigation would be required to discover the truth." Trebelhorn v. Bartlett, *supra*. See, also, Falkner v. Sacks Bros., *supra;* Linch v. Carlson, *supra;* Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315.

We think, under the circumstances here disclosed, appellants had a right to rely upon the statements made by the executor Fred E. Williams, and in fact, that they did rely thereon to their subsequent injury.

It should here be said that his expression of opinion as to value is not of that character. See, Musgrove v. Eskilsen, *supra;* McKibbin v. Day, *supra*; Realty Investment Co. v. Shafer, 91 Neb. 798, 137 N. W. 873; Cressler v. Rees, 27 Neb. 515, 43 N. W. 363, 20 Am. S. R. 691. As said in Cressler v. Rees, *supra*: " 'Where parties stand on an equal footing, expressions of opinion as to the value of certain property will not usually be considered so material that misstatements will constitute fraud. \* \* \*' (Morgan v. Dinges, 23 Neb. 271, 36 N. W. 544, 8 Am. S. R. 121.)"

On the four trips appellants made to the motel immediately preceding the 20th of March, when the contract was entered into, we find they had the opportunity to and did fully examine and inspect the motel property. However, nothing was ever said about termites on these occasions. Does this fact prevent them

from now saying they relied on the representation made as to its condition?

"'A purchaser of real estate has a right to believe and rely upon representations made to him by his vendor as to the character, quality, and location of the property, when the facts concerning which the representations are made are unknown to the vendee.' (Hoock v. Bowman, 42 Neb. 80, 60 N. W. 389, 47 Am. S. R. 691.)" Realty Investment Co. v. Shafer, *supra.*

We think such would be true here as to all matters which could not normally be ascertained by an inexperienced person while examining and inspecting the property. As stated in Musgrove v. Eskilsen, *supra*: "Both defendants having inspected the property before the purchase was made and having then seen evidence of a leaky roof, we do not think they had a right to rely on these representations, even if false."

Also, as stated in Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139, by quoting from 23 Am. Jur., Fraud and Deceit, § 144, p. 945: "'The mere fact that one makes an independent investigation or examination, or consults with others, does not necessarily show that he relies on his own judgment or on the information so gained, rather than on the representations of the other party, nor does it give rise to a presumption of law to that effect. If, under the circumstances, he is unable to learn the truth from such examination or investigation or, without fault on his part, does not learn it and in fact relies on the representations, he is entitled to relief, all other ingredients of liability being present.' "

If the defects are concealed, such as here, we have said: "These defects were latent. The fact that the side walls and ceiling above the second floor room had not been insulated and that the floor joists and subfloor had been burned could only be determined, as it was subsequently determined, by removing a part of the permanent structure of the house. A prospective purchaser is not bound to require a prospective vendor

to tear down parts of a house in order to determine whether or not representations as to the structure are correct." Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275.

In Falkner v. Sacks Bros., *supra,* where it was contended for the general rule that where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie, we said: "This rule has no application, for the defects were latent, * * *."

In Falkner v. Sacks Bros., *supra,* where the representation was that the tractor was in A-1 mechanical condition, we said: "The evidence shows that the tractor proved to be defective in a number of ways which has previously been outlined, and obviously there were latent defects which could not be discovered with ordinary prudence. The evidence fails to disclose that the plaintiff could have discovered that the transmission was defective, the clutch was worn out, or that the universal joints and drive shaft needed to be replaced, and that the air line was bad."

We do not think, because of the nature of termites, that the inspection and examination made by appellants before entering into the contract now prevents or estops them from saying they relied on the representation that the property was in good condition. It is apparent none of the parties observed anything that in any way made them suspicious.

We turn then to the other conditions of which appellants complain. Appellants say the furnace in the residence-office building was defective whereas it was represented to be in good condition. This building was being heated by a manually fed hot-air coal-stoker furnace which we find was in good serviceable condition at the time of the sale and thereafter, until it was taken out in the early part of June 1952. The fact is a natural gas line had been extended past this property in the early spring of 1952. Appellants desired to convert the coal burning furnace to gas and called the gas company

for that purpose. They tested the furnace to see if it was adaptable for conversion but found it was not. · In this regard coal burning and gas burning furnaces are not necessarily built alike. When the gas company would not convert the coal furnace to gas the appellants had a new gas furnace put in. This was a matter of choice and not done because the furnace in the building was in bad condition.

Appellants say the plumbing was not in good condition. They complain of leaky faucets, stopped-up sinks, leaky pipes of which some were underground, one broken toilet, and cracks in the porcelain of several flush boxes. Some of this they should have observed when they examined and inspected the premises and of which they cannot now be heard to complain. The rest are such as are normal in an older property and of which they should have been aware. We find this complaint to be without merit.

Appellants complain of the fact that the sewer and septic tank were not in good working condition. The evidence shows that on occasions the sewer backed up into the washroom and into several of the cabins. Appellants had a plumber come out on several occasions in order to have this condition corrected. They also had to have the septic tank cleaned and the pump used in connection therewith fixed, as it did not work properly. We find nothing unusual in this. They are normal to older properties and such as a buyer should ordinarily expect might occur.

Appellants complain that the entire premises were not in good condition. There is evidence the linens were full of holes, that parts of the wood in some of the screens had to be replaced because they were rotten, and that some sills had to be replaced for the same reason. These are things appellants should have observed during their examination and about which they are now estopped to complain. There were also some replacements, improvements, and betterments made but

that was a matter entirely within the discretion of appellants. They knew, or should have known, they were not buying a new motel. If they wanted to replace some old equipment with new it was all right but they cannot properly complain of their decision in this respect.

Were the appellants guilty of such unreasonable delay, after gaining knowledge of the termites being in the property, that they are thereby prevented from rescinding the contract?

"It is a general and well-established rule that there can be no rescission of a contract unless the parties can be placed in statu quo or substantially so." Perry v. Meyer, 110 Neb. 347, 193 N. W. 717.

"Whether the right of one party to a contract to rescind the same arises on account of fraud inducing the contract or on account of a breach by the other party of a dependent covenant, such right is barred by failure of the one party, for an unreasonable time after knowledge of the facts giving rise to such right, to declare a rescission and disclaim the benefits of the contract." Platner v. Ellingwood, 123 Neb. 719, 243 N. W. 896. See, also, Sipola v. Winship, *supra;* Rayburn v. Norton, *supra;* Rasmussen v. Hungerford Potato Growers Assn., 111 Neb. 58, 195 N. W. 469.

"If the purchaser has knowledge of the grounds upon which he is entitled to rescind, an unreasonable delay upon his part, especially if accompanied by such change of circumstances as makes it impracticable for him to place the vendor in statu quo, or by such acts or conduct on the part of the purchaser as constitute waiver, prevents him from exercising his right to rescind. Even where time is not of the essence of the contract, a purchaser may still lose his right to rescind by delaying action to a time, which, under the circumstances, is unreasonable." 66 C. J., Vendor and Purchaser, § 476, p. 824.

"The question whether laches exists in a particular case depends upon its own peculiar circumstances and is

addressed to the sound discretion of the court, the question of the unreasonableness of the delay depending largely upon the nature of the property in the particular case." 66 C. J., Vendor and Purchaser, § 477, p. 825.

The evidence shows termites multiply rapidly and spread quickly through a building once they gain a foothold therein. After appellants discovered the termites in the residence-office building in the latter part of June 1952 they made no effort to eradicate or control them, although the evidence shows that can be done. They continued to operate the motel, having changed its name to Siesta Motel, and bought and put up signs to that effect. Naturally the longer the termites are left free to operate the more damage they will do. It was only after they discovered additional evidence of termites in several of the cabins in the early part of September 1952 that they took action. This was after the tourist season for 1952 was practically over. It is apparent the business had not been as profitable as appellants had anticipated and so, when they found this additional evidence of termites, they decided it was a good time to give the motel back to the executors. Mr. Russo testified that he and his wife were having domestic trouble about this time so he considered it would be a good idea to get rid of the motor court.

Under these circumstances we do not think appellants are entitled to rescind. They should have acted when they first discovered the place had termites and therefore not as represented. By waiting until September we find they affirmed the contract and that rescission should be denied.

That brings us to the question, are the executors entitled to specific performance of the contract and escrow agreement as decreed by the trial court?

Appellants contend the executors are limited to $1,000 damages for nonfulfillment of the contract. In this respect the contract provides: "IT IS MUTUALLY AGREED that time is an essential element in this con-

tract, and it is agreed in case either party shall fail to perform the stipulations of this contract, or any part thereof, the failing parties shall pay to the other parties of this contract, the sum of One Thousand Dollars, ($1000.00) as damages for non-fulfillment of the contract."

The foregoing provision was based on time being an essential element of the contract. The element of time was waived by the provisions of the escrow agreement hereinbefore set forth. The terms of the escrow agreement permitted appellants to go into immediate possession and with it was waived the provision for damages based thereon as possession thereunder was not contemplated until the provisions thereof had been fulfilled. The record clearly indicates a purpose to rely on the provisions of the escrow agreement to secure performance. See Perry v. Meyer, *supra*.

"The burden is primarily on the party seeking specific performance to show his right in equity and good conscience to the relief sought, * * *." 81 C. J. S., Specific Performance, § 140, p. 712.

"As a general rule, if defendant has been induced to make the contract by reason of any material misrepresentation on the part of plaintiff or his agent, specific performance will be denied, whether the misrepresentation was willful and intended, or made innocently or with an honest belief in its truth." 81 C. J. S., Specific Performance, § 43, p. 520.

"Under this theory, in the exercise of the discretion vested in the court in the granting of a decree of specific performance, a court of equity may, and in a proper case will, deny specific performance of a contract which is tainted with fraud, or was induced by misrepresentations of the complainant, although such fraud or misrepresentations were not such or were not made under such circumstances as to invalidate the contract, or were not such as would authorize the cancellation thereof. The representations need not be fraudulent." 49 Am.

Jur., Specific Performance, § 49, p. 64. See, also, 87 A. L. R. 1346.

"The specific performance of a contract by a court of equity is not generally demandable or awarded as a matter of absolute legal right but is directed to and governed by the sound legal discretion of the court, dependent upon the facts and. circumstances of each particular case. It will not be granted where enforcement would be unjust, and may be denied where the party seeking it has failed to perform." O'Brien v. Fricke, *supra*.

The executors represented the motel property to be in good condition when, in fact, it was in a damaged condition because it contained termites. Under these circumstances specific performance of the contract would be unjust and the trial court was in error in granting it.

Appellants are entitled to some form of relief in this proceeding because of the damaged condition of the motel for, as we said in Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111: "It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." See, also, Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150; Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N. W. 2d 545.

It is true that the remedies of rescission and damages are inconsistent; the former proceeding upon disaffirmance and the latter upon affirmance of the contract. James v. Hogan, 154 Neb. 306, 47 N. W. 2d 847; Rasmussen v. Hungerford Potato Growers Assn., *supra*.

If the contract is actually rescinded it thereby becomes nonexistent. James v. Hogan, *supra*.

However, an election of remedies is not made if, in fact, the remedy sought does not exist. Bratt v. Wishart, 136 Neb. 899, 287 N. W. 769; Live Stock Nat. Bank v. Marshall, 131 Neb. 185, 267 N. W. 414; Henley v. Live

Stock Nat. Bank, 127 Neb. 857, 257 N. W. 244; Fuller v. Fried, on rehearing, 57 N. D. 824, 224 N. W. 668; Heibel v. United States Air Conditioning Corp., 206 Minn. 288, 288 N. W. 393.

We said in Henley v. Live Stock Nat. Bank, *supra:* "The doctrine of election of remedies has no application where the former action was a futile attempt to assert an alleged right which plaintiff never possessed, and in the assertion of which she was defeated."

And in Bratt v. Wishart, *supra,* we held: "It has been held by this court that 'A futile attempt to assert a non-existent remedy does not, under the doctrine of election of remedies, preclude a resort to a legal remedy or operate as an estoppel to assert it.' Live Stock Nat. Bank v. Marshall, 131 Neb. 185, 267 N. W. 414. See Henley v. Live Stock Nat. Bank, 127 Neb. 857, 257 N. W. 244; 18 Am. Jur. 146, sec. 24."

As was said by the Supreme Court of Minnesota in Heibel v. United States Air Conditioning Corp., *supra:* "This decision is the trail's end for plaintiff's attempt to rescind. But we cannot order judgment for defendant on its counterclaim for unpaid purchase price. That is because rescission is but one of the buyer's remedies for breach of warranty. See 2 Mason Minn. St. 1927, § 8443. His unsuccessful attempt to rescind is not such an election of remedies as to bar any other. Holcomb & Hoke Mfg. Co. v. Osterberg, 181 Minn. 547, 233 N. W. 302, 72 A. L. R. 722. Such a frustrated attempt to pursue a wrong remedy is not an election which will bar one otherwise right. In re Van Norman, 41 Minn. 494, 43 N. W. 334; Ross v. Amiret Farmers Elev. Co., 178 Minn. 93, 226 N. W. 417."

If the attempted rescission is not successful because the party seeking to rescind is found to have actually affirmed the contract then the contract exists and rights thereunder may be enforced. See, Herdan v. Hanson, 182 Cal. 538, 189 P. 440; Urdang v. Posner, 220 App. Div. 609, 222 N. Y. S. 396; Waters v. Woods, 5 Cal.

App. 2d 483, 42 P. 2d 1072; Reinertson v. Struthers, 201 Iowa 1186, 207 N. W. 247; Bischoff v Hustisford State Bank, 195 Wis. 312, 218 N. W. 353; Fuller v. Fried, *supra;* Heibel v. United States Air Conditioning Corp., *supra.*

As held in Reinertson v. Struthers, *supra:* "* * * the failure to secure relief based upon a rescission, unless for a failure to establish the fraud, simply leaves the party who sought it in the attitude of having conclusively affirmed the contract. But affirmance of the contract does not waive the fraud, nor bar the right to recover damages, but bars a subsequent rescission merely."

And as stated in Fuller v. Fried, *supra:* "The overwhelming weight of authority is to the effect that in these circumstances, that is, where the buyer seeks to avail himself of the remedy of rescission and such remedy no longer exists, the buyer is not precluded from invoking the only existing remedies, namely, some remedy based upon the theory of the continued existence of the contract."

The cause of action in either event is fraud and the allegations of fact would be precisely the same in substance, the only substantial difference between the two being the form of relief prayed for. See, Friederichsen v. Renard, 247 U. S. 207, 38 S. Ct. 450, 62 L. Ed. 1075; Waters v. Woods, *supra;* Reinertson v. Struthers, *supra;* Rasmussen v. Hungerford Potato Growers Assn., *supra.*

While evidence of the damage caused by the termites was introduced we do not think it sufficiently relevant to April 22, 1952, when the appellants actually went into possession of the property, that we can properly act in regard thereto. But we do not think this litigation should end because of that fact.

As stated in Fuller v. Fried, *supra:* "* * * we are of the opinion that the ends of justice require that the plaintiffs be permitted, if they so desire, upon such terms as may be just, to file an amended complaint asking relief by way of damages for breach of warranty." See,

also, Heibel v. United States Air Conditioning Corp., *supra.*

We therefore reverse the judgment of the district court and remand the cause thereto for further proceedings in accordance herewith subject, however, to the following directions: That appellants be given 60 days to amend their action for one in damages; that if they so elect, then that issue be tried and determined by the trial court; and that if the value of the motel property, as of April 22, 1952, be found to have actually been damaged because of termites being therein, the amount thereof.

If, within 60 days, the appellants do not elect to amend their cause to one for damages then the trial court is directed to order the provision of the escrow agreement to be carried out and to do the same, even though the appellants have elected to amend, if, after trial, no damages are found to have been established. If, however, it is found the property, as of April 22, 1952, was damaged by the fact that termites existed therein and the amount thereof determined, then the trial court is ordered to direct the escrow agent to pay the appellants the amount of such damages and to turn over to the executors the balance of the purchase price remaining in its possession, including the note and mortgage which is a part thereof, and to generally carry out the other provisons of the escrow agreement.

REVERSED AND REMANDED WITH DIRECTIONS.